THE ILLINOIS LINEN COMPANY

*v.*

ROSELLE M. HOUGH.

| 91 | 63 |
|----|----|
| 35a | 344 |
| 91 | 63 |
| 137 | 519 |
| 91 | 63 |
| 165 | 407 |
| 91 | 63 |
| 168 | 513 |
| 91 | 63 |
| 174 | 556 |
| 91 | 63 |
| 185 | 79 |
| 91 | 63 |
| 96a | 2659 |
| 91 | 63 |
| 99a | 4511 |
| 91 | 63 |
| 196 | 3531 |
| 91 | 63 |
| 105a | 4240 |
| 91 | 63 |
| 107a | 3226 |

1. MEASURE OF DAMAGES—*where price is fixed by special contract.* Where an article is sold and delivered under a special contract, in which the price is fixed by the parties, that price must govern, and because there is a conflict in the evidence as to what the price was, does not authorize the jury to allow what the article was reasonably worth, but they must find, from the evidence, what the contract price really was, according to its weight and credibility.

2. INSTRUCTION—*calling attention to particular facts.* An instruction which calls attention to particular facts in the testimony on one side, and omits any reference to facts shown on the other side, bearing upon the point in issue, is faulty.

3. SAME—*when one does not cure a faulty one.* The giving of a correct instruction upon a point in a case will not obviate an error in an instruction on the other side, where they are entirely variant, and there is nothing to show the jury which to adopt.

4. CORPORATION—*right of officers to pay for services.* Where the by-laws of a private corporation provide that the officers shall receive such compensation for their services as shall be determined at the annual meeting of the stockholders, or at any special meeting called for that purpose, and none are ever so fixed, an officer performing the ordinary duties and services pertaining to his office will not be entitled to recover for such services of the corporation, in the absence of any agreement to pay him for the same.

5. AGENT—*neglect to keep proper accounts, construed against him.* It is ordinarily the duty of agents to keep regular accounts and vouchers of the business in the course of their agency, and if this duty is not faithfully performed, the

omission will always be construed unfavorably to the rights of the agent, and care will be taken that the principal shall not suffer thereby.

6. Where a president of a private corporation has power to draw drafts upon the treasurer, and does so, indiscriminately and undistinguishably, for private and company uses, in a suit between him and the company in reference to that matter, the burden of distinguishing between the drafts will be imposed upon him; and in the absence of such showing on his part, he will be chargeable with the whole.

APPEAL from the Circuit Court of Du Page county; the Hon. H. H. CODY, Judge, presiding.

Mr. WILLIAM E. LEFFINGWELL, for the appellant.

Messrs. E. N. & N. E. GARY, for the appellee.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

This was an action of assumpsit upon the common counts, by Roselle M. Hough against The Illinois Linen Company, resulting in a verdict and judgment for the plaintiff for $15,000. The defendant appealed, and assigns for error the giving and refusing of instructions, and that the verdict is not supported by the evidence.

The plaintiff's claim was of the amount of $25,000, embracing various items of account. One item was 809 tons of flax fibre, $10—$8090. Touching this, the court below, on the part of the plaintiff, instructed the jury, in substance, that if the minds of the plaintiff and one Crane, acting for the linen company, did not meet upon the price to be paid for the flax straw in question, and that the plaintiff had, at all times, understood and believed that the company agreed to give him $10 per ton for such straw, and that the defendant company understood that the price they agreed to give for the straw was $3.50 per ton, then there was no contract for the price of the straw made between the parties, and the plaintiff would be entitled to recover what the evidence showed the price of the straw to be reasonably worth.

Under the evidence in the case, we regard this instruction

erroneous. That there was a contract for this straw, and that a price was agreed upon, is asserted by both parties. The witnesses on the one side say it was $10 per ton, those on the other side $3.50. The only question arising was, what was that price which was agreed upon. This the jury should have determined upon the weighing of the testimony and passing upon the credibility of the witnesses. Because there was contradictory evidence upon the point, the jury should not have been encouraged, as they were here, by instruction from the court, to decline the more difficult task of a determination upon conflicting testimony of what the contract price was, and adopt the easier mode of saying what was a reasonable price. We can see nothing in the evidence which was calculated to create anything of mistake or misapprehension of what the contract price was, thus leaving the question entirely one of the credibility of witnesses.

The fifth instruction on the part of the plaintiff, with reference to the amount of flax straw delivered, was faulty, under repeated decisions of this court, in calling attention to particulars of testimony on that subject on the side of the plaintiff, and omitting any reference to defendant's testimony on the point. The eleventh instruction for the plaintiff, on this point, was the proper one, and the only one plaintiff was entitled to in this regard, with the exception that the last clause of it was wrong, in being suggestive of the number of tons delivered.

Another item of charge was for services,—$5000. During the time of these services, some fourteen months, plaintiff was the president of the company. Upon this head there was given, on the part of the plaintiff, this instruction:

" 6. Although the jury may believe, from the evidence, that the plaintiff was not to receive any compensation as president of the company, yet if they further believe, from the evidence, the plaintiff, with the knowledge and consent, and at the request of the defendant, performed other and different services for the company than were required of him as such

president, and such as did not properly pertain to said office, then the plaintiff has the same right to recover for such extra services so rendered by him (if such are shown, by the evidence, to have been performed,) as though he was not, at said time, president of said company; hence, if the jury believe, from the evidence, that the plaintiff, with the knowledge of the defendant, rendered services for the company to the value of $5,000, or any other sum, and that such services were outside of and not included in his duties as president, then the jury, in making up their verdict, should allow the plaintiff for such extra services, if any have been proven, to the amount of $5000, or any other sum which the proof shows such services to have been worth."

The by-laws of the company provided, that the officers should receive such compensation for their services as should be determined at the annual stockholders' meeting, or at any special meeting called for that purpose. Plaintiff admits that no compensation was ever thus fixed. Mr. Crane, the largest stockholder at the time, and the treasurer of the company, testifies that it was agreed between plaintiff and himself and the other officers and directors of the company, that the president, secretary and treasurer should not have any salary; that the superintendent was to be paid, the by-laws requiring he should devote all his time to the interests of the company; that the other stockholders besides himself were the plaintiff, Wilber and Smith,—that they were all directors, and Smith the superintendent; that the witness performed many services outside of his duties as treasurer, and never received any salary for his services or made any charge therefor. The secretary of the company gives confirmatory testimony as to the making of such agreement. The plaintiff alone denies the agreement.

The prescribed duties, by the by-laws, of the officers of the company were such duties as are generally required of such officers in similar corporations, and such other peculiar duties as the necessity of the business might, from time to time, require.

As to his services, the plaintiff testified: "I spent my whole time, while I was president of the company, night and day, except when superintending farm. I purchased fibre and looked after whole business, outside and inside. I averaged about twelve hours per day. My services were reasonably worth $5000 for eighteen months."

The evidence shows, that during this time the plaintiff was largely engaged about his own private affairs, in addition to superintending his farm of some nine hundred acres. We are of opinion that, under the evidence in the case, the plaintiff was not entitled to compensation for his services, and that the instruction should not have been given.

The correct instruction upon the subject was given for the defendant, as follows:

"The court instructs the jury, if you shall believe, from the evidence, that by the articles of incorporation and by-laws of the defendant, it is provided that no officer of the defendant shall receive any other compensation for his services than shall be determined and allowed by the stockholders at the annual meeting, or a special meeting called for that purpose, and that no such allowance was ever made or provided for the services of the plaintiff, or if you shall believe, from the evidence, that it was agreed by the plaintiff and other officers of the defendant that they should not charge for or receive any compensation for their services rendered by them, then the plaintiff would not be entitled to recover upon his claim for such services."

But this did not cure the error. The jury were left at liberty to follow either instruction, unenlightened as to which one was the law.

The defendant asked the following instruction:

"The court instructs the jury, that if you believe, from the evidence, that the plaintiff, while acting as president of defendant, drew certain drafts upon the treasurer of defendant

for the payment of money to himself and other persons therein named, and signed the said drafts with the word 'president' appended to his name, and upon the face of said drafts, directed the same to be charged to the account of the defendant, and if you shall further believe, from the evidence, that the defendant paid the money on said drafts, then you are instructed, as a matter of law, that the fact of the plaintiff's so signing said drafts, and directing the amount thereof to be charged to the defendant, would not relieve him of his responsibility to account to the defendant for the amount of money so drawn by him, and the burden of proof is upon the plaintiff to show that he has applied all of said money so, as aforesaid, drawn from the treasury of the defendant, to the use of the defendant, and if he has failed to so satisfy you in relation to any of the said drafts, by a preponderance of evidence, then the defendant would be entitled to recover therefor from the said plaintiff."

—which the court refused to give, but modified to the effect that the plaintiff could only be held to account for such money as the evidence showed he had drawn for his own use and benefit, or such as he had appropriated to his own use, and as thus modified gave the instruction,—all which was excepted to.

There was a set-off in the case, on the part of the defendant, of moneys paid and advanced, etc., of a large amount. The evidence shows that the plaintiff had authority to draw upon the treasurer of the company for money. This he often did, and all his drafts were paid. Some of the money so drawn was for the use of the company, and some for his own use. All the drafts, however, with the exception of one or two, were signed " R. M. Hough, President," and were, upon their face, directed to be charged to the account of the Illinois Linen Company. The treasurer's office was in Chicago, and the factory of the company was at Roselle, some twenty-eight miles distant. The plaintiff's place of business was at the latter place, and the treasurer, as may be supposed, could know nothing of the intended use of these drafts, except as

appeared upon their face.    Though the assertion is made that upon the face of many of the drafts it appeared that they were drawn expressly for the benefit of the company, upon examination of the portion of the record referred to in support of the assertion, we find but a single draft so showing.

There were one hundred and sixteen of these drafts thus drawn upon the company, amounting to the sum of $36,736.68. The plaintiff himself admits that certain ones of them, amounting to $10,520.58, were for his own individual account, and testifies: "I kept no account, record or memorandum of any individual transactions with the company, supposing it would be on the company books."

There was remissness of duty here, on the part of the plaintiff, in his manner of dealing with this large amount of the company's money, drawing it, as he did, from the treasury of the company, upon drafts with no trace upon them to show for whose use (his or the company's) they were drawn, and keeping no account or memorandum thereof, but leaving, for whose use the drafts were drawn, to be shown, as best might be, from memory.

It is ordinarily the duty of agents to keep regular accounts and vouchers of the business in the course of their agency, and if this duty is not faithfully performed, the omission will always be construed unfavorably to the rights of the agent, and care will be taken that the principal shall not suffer thereby.    Story on Agency, § 332.    In 1 Story's Eq. Jur. § 468, after observing upon the duty of agents to keep regular accounts and vouchers, it is remarked further: "Upon similar grounds, as an agent is bound to keep the property of his principal distinct from his own, if he mixes it up with his own the whole will be taken, both at law and in equity, to be the property of the principal, until the agent puts the subject matter under such circumstances that it may be distinguished as satisfactorily as it might have been before the unauthorized mixture on his part,—in other words, the agent is put to the necessity of showing, clearly, what part of the property belongs

to him; and so far as he is unable to do this, it is treated as the property of his principal."

Analogous to the mixture of property was this confusion of private and company uses of these moneys, admitting, we think, of the application against the plaintiff of a similar principle to the above. The drafts having been drawn, indiscriminately and undistinguishably, for private and company uses, we think the burden of distinguishing between them was imposed upon the plaintiff. He knew the purposes for which the drafts were drawn,—whether for his own or the company's use. The company, presumably, did not know, there being nothing in the form the drafts were drawn to give information.

We are of opinion that, at least under the facts of this case, the instruction, as drawn, should have been given, and that there was error in the modification of it.

The error in respect of instructions makes it unnecessary to consider the point as to the verdict not being sustained by the evidence.

The judgment will be reversed and the cause remanded.

*Judgment reversed.*