## The Rock Island and Peoria Railway Company

*v.*

## The Leisy Brewing Company *et al.*

*Opinion filed October 24, 1898.*

| | |
|---|---|
| 174 | 547 |
| 181 | 247 |
| 174 | 547 |
| 184 | 357 |
| 184 | 458 |
| 185 | 18 |
| 174 | 547 |
| 193 | 3476 |
| 174 | 547 |
| 196 | 7287 |
| 174 | 547 |
| 200 | 3 71 |
| 200 | 2 74 |
| 200 | 7114 |
| 200 | 3251 |
| 201 | 3415 |
| 174 | 547 |
| 206 | 3449 |
| 174 | 547 |
| 208 | 3103 |

1. Eminent domain—*jury's conclusions from inspection of premises are in the nature of evidence.* What the jury may learn from a personal inspection of the premises is in the nature of evidence, and may be considered by them when passing upon the testimony of witnesses, and may also be resorted to in determining the weight to be given to the conflicting estimates of value.

2. Same—*value of property is largely a matter of estimate or opinion.* The value of real estate condemned is largely a matter of estimate or opinion, based upon sales of like property under circumstances calculated to produce competition among purchasers, and upon a consideration of those particular uses to which it is or may be reasonably adapted, which enter into and affect its market value.

3. Damages—*verdict upon personal view and conflicting testimony not lightly disturbed.* Damages awarded by jury for property condemned, after a personal view of the premises and upon conflicting oral testimony, will not be disturbed on appeal, unless so grossly inadequate or excessive as to indicate fraud or misconduct by the jury.

4. Same—*adaptation of lot for dock or wharf purposes as an element of damage.* The adaptation of a lot abutting upon a navigable river for dock, wharf or warehouse purposes, which gives such lot an increased market value, may be considered by the jury in estimating the owner's compensation for the taking of the entire lot by a railroad company for track purposes, even though no immediate demand for such structures exists.

5. Same—*compensation is allowable for a deprivation of ice privileges.* The privilege of erecting an ice house and of harvesting and selling ice gives an increased value to a lot abutting upon a river, for which the owner is entitled to compensation upon the taking of the lot by a railroad company for track purposes, as, while the owner would still retain the legal right to take out ice, the occupation of the lot by the company would deprive him of its exercise.

6. Instructions—*jury presumed to have considered instructions as a whole.* The jury are presumed, in arriving at their verdict, to have considered the instructions as a whole, and to have noticed the qualification which one instruction makes upon another.

7. Same—*each sentence need not inform the jury that they must find from the evidence.* A requirement in the first part of an instruction that the jury must base their findings upon the evidence applies and extends to all subsequent clauses.

Appeal from the Circuit Court of Peoria county; the Hon. T. M. Shaw, Judge, presiding.

This is a condemnation proceeding, begun by the appellant company for the purpose of condemning seven lots in the city of Peoria, to-wit, lots 29, 30, 31, 32, 33, 34 and 37 in Mills' second addition to that city. Lots 29, 30 and 31 are the property of the appellee, the Leisy Brewing Company, and lots 32, 33, 34 and 37 belong to the appellee, Jane A. Guth. The lots front on Water street in the city of Peoria, and run back to or towards the Illinois river, or that part of the river which, at that point, is designated "Lake Peoria." Each lot has a frontage of 50 feet and a depth of between 150 and 210 feet, except lot 37, which has a frontage of 66 feet. The tracks of the appellant company and those of another railroad company, being five or six in number, lie along Water street, adjoining the property sought to be condemned. The petition for condemnation states, that it is necessary for the petitioner to take, appropriate and use said lots for the purpose of laying side-tracks and switches thereon to enable it to properly do its business with the general public, and perform its functions as a railway company. The petition further alleges, that it is necessary to take the whole of said lots for the purpose of constructing thereon side-tracks and switches to be used with the other property of the appellant in the carrying on of its business, and that without said lots it cannot utilize its other property in said addition.

Upon a trial of the case before the court and a jury, the jury returned a verdict assessing the compensation to be paid for lots 29, 30 and 31 at $4500.00, and for the other lots 32, 33, 34 and 37 at $5200.00; and, as compensation to one Spurck, for a tax title held by him on the property, one dollar. After overruling a motion for new trial, judgment was entered upon said verdict in accordance with the terms thereof, and of a certain stipulation,

according to the brewing company the privilege of connecting its brewery with the river for the purpose of obtaining water and sewerage and maintaining a pump station upon the river bank, subject to the condition that such use by the brewing company should not interfere with the use by the railroad company of said property for the purposes of laying railway tracks and operating cars thereon; and, also, subject to the condition that the pumping station, if maintained by the brewing company, should be so constructed as not to prevent the filling in of said lots and laying tracks thereon. The present appeal is prosecuted from such judgment of condemnation.

Instructions numbered 1, 2, 3, 4, 6, 8 and 9 given for the defendants are as follows:

1. "The jury are further instructed, that, as owners of lands fronting upon and bounded by a navigable stream, the defendants in this case, subject to the rights of the public in such navigable stream, own their several lots to the middle thread of said stream, and the said defendants, as such lot owners, have the right to use and enjoy their several lots by building docks and wharves thereon, or by filling in the same with earth or other solid matter to any extent whatever, so long as they do not interfere with the rights of navigation by the public in such stream.

2. "The jury are further instructed, that in determining the fair cash market value of the property sought to be condemned in this case you have a right to take into consideration, and should take into consideration, all the purposes for which said property is adapted and is used or may be used, so far as such adaptation and uses are shown by the evidence or by your view of said premises, so far as the same may have affected the market value on 14th Sept. 1896.

3. "The jury are further instructed, that the defendants in this case are each entitled to the fair cash market value on the 14th day of September, A. D. 1896, of their respective lots sought to be taken, regardless of the

causes which give them value at that time. If the jury believe, from the evidence in the case, including their own view, that the value of said lots, or any of them, on that day was owing, in whole or in part, to the projection by the plaintiff of the improvement to its railroad facilities for which it seeks to condemn said lots, still the owners of said lots are entitled to the fair cash market value of said lots as they then stood.

4. "The jury are further instructed, that the owner of lands or lots fronting upon a navigable stream, and of which lands or lots such stream forms one of the boundary lines, has a lawful right to erect docks and wharves conforming to such boundary line in and along said river, conforming, however, to the regulations of the proper public authorities for the protection of the public rights in such stream; and such owner may so place such docks and wharves as to have the benefit of the navigable part of such stream, but not interfering with the public rights of navigation.

6. "The court instructs the jury, that in fixing the amount of compensation to be paid to the defendants, severally, you should take into consideration the use for which the property is suitable and to which it is adapted, having regard for its situation and the business wants of that locality, or such as may reasonably be expected in the near future, so far as the same appears from the evidence, and so far as the same affects its market value on the 14th September, 1896.

8. "The court instructs the jury, that if you find, from the evidence in this case, that the lots in question, or any of them, are susceptible of enlargement and extension by filling, thus giving increased areas for any use to which the property may be put, then you have a right to take that into account in arriving at your verdict, and give such fact the weight which, in your judgment, it is entitled to receive, so far as the same affected their market value on the 14th of September, 1896.

9. "The court instructs the jury, that the owners, sev-
erally, of the lots fronting on the Illinois river and here
sought to be condemned, own to the middle thread of the
stream, subject only to the right of the public to use the
navigable portions thereof for purposes of navigation.
Such owners have also the exclusive right to any and
all ice forming in said river in front of their lots, re-
spectively, to the middle thread of the stream, and may
themselves cut and remove the same, or sell such ice to
another with the exclusive right to harvest it."

Stevens, Horton & Abbott, for appellant.

Jack & Tichenor, for appellee the Leisy Brewing Co.

Page & Wead, for appellee Jane A. Guth.

Mr. Justice Magruder delivered the opinion of the
court:

*First*—The first ground, urged by the appellant in
favor of reversing the judgment below, is that the dam-
ages awarded by the jury are excessive, and not war-
ranted by the preponderance of the evidence.

There is great conflict in the testimony of the wit-
nesses as to the value of the property condemned.  Such
conflict always exists in cases of this character.  The
witnesses for the appellant estimate the value of the lots
at from $5.00 per front foot for the unfilled lots to $12.00
per foot for the filled lots.  The highest valuation put
upon the lots by the testimony for the appellant is some-
thing less than $4000.00.  The witnesses for the appellees
estimate the value of the lots all the way from $25.00 to
$50.00 per front foot, and the total value of all the lots
at from about $9600.00 to about $18,000.00.  Some of the
witnesses for the appellees in making their valuations
allow a certain amount per foot for the cost of filling the
lots.  The jury went upon the premises and viewed the
same.  So far as we are able to discover, the witnesses

for the appellees are entitled to as much credit as the witnesses for the appellant, and their means of becoming acquainted with the value of property were equal to those possessed by the witnesses of the appellant.

The property sought to be condemned appears to be located in the center of the city and in the vicinity of extensive industries. Its location is six or seven blocks north-east of Main street in Peoria. Water street, upon which the lots front, is the street nearest the river and substantially parallel with its general course, though at varying distances from the shore. The union passenger depot is six blocks below Main street, and Main street starts from the river at right angles to Water street. Passenger and freight depots are located along Water street from three to eight blocks below Main street; and distilleries, malt houses and other manufactories and warehouses line the river bank for two miles or more down the river from Main street. At a distance of about three blocks from Main street is the plant of what is called the Peoria Grape Sugar Company, above which are two ice houses. The lots slope from Water street towards the river, and require filling to be made available for permanent use. Further up the river are several rows of ice houses built upon filled ground. It thus appears, that the lots in question, lying as they do between the railroad tracks and Water street on one side and the river on the other side, are adapted for warehouses, ice houses, manufactories and docks, having facilities for the receipt and shipment of freight by land and water. Two of the lots, to-wit, lots 29 and 30, have been filled to some extent, and had been leased by the brewing company to a tenant who erected an ice house thereon, which was burned down before the filing of the present petition. On a portion of one of the other lots filling appears to have been done, and a small pump house appears to have been built thereon, and operated in connection with the brewery.

Of course, the uses, to which property of this character is adapted, would be an important consideration in fixing its value. Its location, also, in the center of the city, and in the midst of industries already in full operation, would be an important factor in the estimate of its value. After a careful examination of the evidence, we are not satisfied that the verdict of the jury awarded an amount which was excessive. The question of the value of the property was a question for the jury to determine. The jury saw the witnesses and observed their manner of testifying. The credibility of the witnesses, their intelligence and their means of knowledge were matters for the determination of the jury. There is no standard value for real estate. The value of real estate is a matter of estimate or opinion; its value is a conclusion arrived at, as a general thing, by comparing the value of the property in question with sales of like property, made under circumstances calculated to produce competition among purchasers. In determining the full value of real estate, its advantages and disadvantages, and its adaptation and use, present and prospective, may be considered.

In addition to this, the evidence in this case was supplemented by a personal view and examination of the premises by the jury. When such an examination was made, the Illinois river was at an unusually high stage, and a part of the property was under water. Under these circumstances the property must have been seen by the jury in its worst condition. Where there is a personal view by the jury of the premises sought to be condemned, the conclusions drawn by the jury from their view are in the nature of evidence. What the jury learn from their examination of the premises may be considered by them in passing upon the testimony of the witnesses; and, where the evidence is conflicting, they may resort to the results of their examination in determining the weight to be given to the conflicting estimates of the various

witnesses, so that their verdict, if supported by the testimony, will not be disturbed, merely because it is contrary to what appears to be the preponderance of the evidence. Where the jury make a personal inspection of the property sought to be condemned, the court is not justified in reversing the judgment based upon such verdict, unless the damages awarded are so grossly excessive, as to show that the verdict was the result of passion, or of undue influence, or of improper means. It is the settled doctrine of this court, that the damage awarded by a jury in a condemnation proceeding will not be disturbed where the evidence is conflicting, and the jury viewed the premises. Inasmuch as it cannot be known how much weight the jury gave to their own conclusions as derived from a personal inspection of the premises, and how much weight they gave to the testimony of the witnesses, it cannot be said that the verdict is against the weight of the evidence. (*Illinois and Wisconsin Railroad Co.* v. *Von Horn*, 18 Ill. 257; *Calumet River Railway Co.* v. *Moore*, 124 id. 329; *Chicago and Evanston Railroad Co.* v. *Jacobs*, 110 id. 414; *Kiernan* v. *Chicago, Santa Fe and California Railway Co.* 123 id. 188; *Chicago, Paducah and Memphis Railroad Co.* v. *Mitchell*, 159 id. 406; *Pittsburg, Ft. Wayne and Chicago Railway Co.* v. *Lyons*, 159 id. 576; *Chicago, Burlington and Quincy Railroad Co.* v. *City of Naperville*, 166 id. 87).

*Second*—The errors assigned by the appellant relate to the giving of certain instructions by the court below on behalf of the appellees. These instructions are set forth in the statement preceding this opinion, and will not be here repeated in full. Objection is made to the second instruction given for appellees. The objection thus made is two-fold.

In the first place, the instruction is said to be bad upon the alleged ground, that it leaves out of consideration any qualification to the effect that the uses and purposes mentioned therein must be those, which enter into and affect the market value of the property. Where land

is condemned, its value may be estimated, not only with reference to the uses to which it is actually applied, but also those to which it is adapted; but this rule is subject to the qualification, that the latter uses must be those which enter into and affect its market value. (*Chicago, Burlington and Quincy Railroad Co.* v. *City of Chicago,* 149 Ill. 457). This instruction does not contravene the requirements of the rule thus laid down. The instruction makes direct reference to the subject of the adaptation and uses of the property, and then closes with the words, "so far as the same may have affected the market value on 14th Sept. 1896," the latter date being the date of filing the petition for condemnation. The words "the same," as here used, refer back to the words "adaptation and uses." Thus the instruction brings the subject of the adaptation and uses of the property, as disclosed by the evidence, into direct connection with the question of market value. The jury were directed to consider only those uses of the property, which entered into and affected its market value.

In the second place, the second instruction is objected to upon the alleged ground, that it contains no qualifying words limiting the element of value, embodied in "adaptation and uses," to present demands, or such as may reasonably be expected in the immediate future. In *Boom Co.* v. *Patterson,* 98 U. S. 403, the Supreme Court of the United States said: "The compensation to the owner is to be established by reference to the uses for which the property is suitable, having regard to the existing business or wants of the community, or such as may be reasonably expected in the immediate future." To the same effect is *Chicago, Burlington and Quincy Railroad Co.* v. *City of Chicago, supra.* In *Calumet River Railway Co.* v. *Moore, supra,* we said (p. 334): "The compensation is to be estimated with reference to the uses for which the property is suitable in its then condition, having regard to its location, situation and quality and to the

business wants in that locality, or such as might reasonably be expected in the near future." If such a defect, as is thus charged against the second instruction, exists therein, it is cured by the instruction numbered 6, which was given for the appellees, and which conforms to the rule laid down in the authorities last above quoted. Counsel for the appellant say, that the sixth instruction does not cure the defect alleged to exist in the second, but the principle which they invoke, that an erroneous instruction is not cured by an instruction which is correct, does not here apply, for the reason that the two instructions are not inconsistent with each other. The sixth merely explains and qualifies the second without laying down any rule which is contradictory to it. The giving of a correct instruction upon a point in a case will not obviate an error in an instruction on the other side where they are entirely variant, because then there is nothing to inform the jury which instruction to follow, but they are left at liberty to follow either, unenlightened as to which one is the law. (*Illinois Linen Co.* v. *Hough*, 91 Ill. 63). Such variance or inconsistency does not here exist. The jury are presumed, in making up their verdict, to consider the instructions as a whole, and thus to notice the qualification which one makes of another. (*Toledo, Wabash and Western Railway Co.* v. *Ingraham*, 77 Ill. 309; *Cunningham* v. *Stein*, 109 id. 375).

It was said, however, in *Calumet River Railway Co.* v. *Moore, supra*, that, if certain lots were available for dock purposes for which there was no immediate demand, their value, when improved by the building of docks and the profits that might be derived therefrom, or the use of the lots at some future time when business or the wants of the community might make profitable the making of docks or slips on the property, would be merely conjectural and remote, forming no proper element in estimating the damages to be paid, but that, if the fact that the lots were located with a frontage on the river, at a place

where they could, at some future time, when demanded, be made available as dock property, enhanced their then market value in their then condition of improvement, or want of improvement, that fact would be competent and proper to be shown and to be considered by the jury in estimating the damages; that it could make no difference that there might be no present demand for docks upon the property; and that if, in consequence of their supposed adaptation to such use, they had an increased market value above what they otherwise would have, such value would form a proper basis of recovery.

Objection is also made to the.third instruction given for the appellees. This third instruction is the same as an instruction commented upon in the case of *Sanitary District* v. *Loughran*, 160 Ill. 362. We there held, that such objections as are now urged were not sufficient to authorize us to regard the giving of the instruction as error. The reasons for this holding are given in that case, and need not be here repeated.

Objection is also made to the ninth, first and fourth instructions given for appellees. It is not claimed, that the legal principles announced by these instructions are not correct. The title of a person, owning land bounded by a stream of water, extends to the middle or center thread of the stream. (*Middleton* v. *Pritchard*, 3 Scam. 510; *Braxon* v. *Bressler*, 64 Ill. 488; *Griffin* v. *Johnson*, 161 id. 377.) It is said, that the instructions, although making an abstract statement of the law which is correct, had the effect of inducing the jury to believe, that the appellant was obliged to pay for what it had no right to take, and did not take. The instruction is said to mean, that, by this condemnation proceeding, the appellees, as owners of the property, are compelled to part with their right to the ice forming on the river in front of their lots respectively, and with their right to cut, remove and sell the same to others together with the right to harvest it. We do not regard the instruction as having any such

meaning. Counsel quote section 13 of article 2 of the constitution of 1870, which provides, that the fee of land, taken for railroad tracks without the consent of the owners thereof, shall remain in such owners, subject to the use for which it is taken. The argument is, that the appellant acquired only the right to use such portions of the property as are necessary for railroad uses, and that the owner retains the fee of the land and all riparian and other rights, not inconsistent with the railroad company's use of such portions of the land, as it actually appropriates. Undoubtedly, the property right, which a railroad company acquires by condemnation, does not extend beyond the exigencies of the road. The railroad company is entitled to use the earth, gravel and stone within the location of the property condemned by it for all railroad purposes, but is not entitled to sell any of such material. To allow it to sell would be to permit an abuse of its privilege to take land by compulsory process, inasmuch as a railroad company only takes land for public use, and not to sell again either wholly or in part. Counsel for appellant then refer to a number of cases, which involve the question whether a railroad company has the right to appropriate material along its right of way, obtained by condemnation, for purposes other than construction or reasonable repairs under all the circumstances. These cases are to the effect, that a railroad company cannot sell or otherwise dispose of the material along its right of way, where its rights are limited to an easement. (*Aldrich* v. *Drury*, 8 R. I. 554; *Chapin* v. *Sullivan Railroad Co.* 39 N. H. 564; *Blake* v. *Rich*, 34 id. 282; *Lyon* v. *Gormley*, 53 Pa. St. 261; *Lance's Appeal*, 55 id. 16; *Preston* v. *Dubuque and Pacific Railway Co.* 11 Iowa, 15; *New Jersey Zinc and Iron Co.* v. *Morris Canal and Banking Co.* 36 Am. & Eng. R. R. Cases, 515; *Rumsey* v. *New York and New England Railroad Co.* 39 id. 34). We have no doubt as to the correctness of the doctrine laid down in the cases thus referred to. As was said by the Supreme Court of Pennsylvania in

*Lance's Appeal, supra:* "No one can pretend that a railroad company can build private houses and mills, and erect machinery, not necessarily connected with the use of their franchise, within the limits of their right of way. If it could, stores, taverns, shops, groceries and dwellings might be made to line the sides of the road outside of the track—a thing not to be thought of under the terms of the acquisition of the right of way."

But the cases referred to by counsel have no relation to the matters here under consideration. The ninth, first and fourth instructions, given for the appellees, do not inform the jury that the appellant company, as the result of the present condemnation proceeding, will have the right to establish ice houses, and cut all the ice, which may form in the river to the middle thread of the stream. On the contrary, the instruction informs the jury, that the appellees, as owners of the property, have the exclusive right to the ice, formed in the river in front of their lots, to the middle thread of the stream, and that they may themselves cut or remove the same, or sell the same to others with the exclusive right to harvest it. But, in its petition for condemnation, the appellant company states, that it is necessary for it to acquire for railroad purposes the whole of the lots in controversy, in order to place thereon switches and side-tracks for the operation of its business. The appellant will thus be authorized to occupy and utilize for its own purposes all of the lots in question between its present right of way along Water street and the line of navigation in the Illinois river. It may fill the lots to this line, and cover their whole extent with tracks, and use them in its business the same as though it owned the land in fee. It will not be pretended that, after the lots have been condemned by the railroad company, the former owners will be able to erect ice houses or place any improvements upon the unoccupied portions of the lots. The fact, that the ice forming in front of the lots belongs to the owners, and

that they have the right to harvest and sell it, was an element in the value of the property and, therefore, proper to be considered by the jury in arriving at a verdict. The taking of the property for the purposes named in the petition will unquestionably deprive the owners of the possibility of making any use of the ice privileges connected with the lots. If the appellant establishes at this point railroad yards for switching and storage purposes, it will be necessary for it to fill in these lots towards the channel of the river beyond the present low water mark. This will prevent the use of the property by appellees for the purpose of harvesting ice. Under such circumstances the lots will continue to have no value for the purposes of ice houses. The testimony shows, that ice houses must be located upon the river bank, or very near thereto, in order to be economically operated. The privilege of erecting ice houses and cutting ice from the river gave a value to the lots, and, when appellant takes the lots, it takes them so far as they are valuable for such purposes; and appellees are entitled to be compensated for the loss of such value. The instructions here objected to present this matter to the jury in the light thus indicated; and we are not able to say that they are erroneous. Undoubtedly, by the condemnation appellant will take only an easement in the property, and not the fee of the property. The bare legal right will exist in the appellees as before, but the exercise of that right will probably be an impossibility.

The eighth instruction given for the appellees is objected to upon the alleged ground, that, by the use of the words, "and give such fact the weight which, in your judgment, it is entitled to receive," the jury are allowed to determine from their own judgment, and not from the evidence or from their inspection of the premises, the extent to which the possibility of enlargement and extension of the lots by the filling of the same will affect their market value. The instruction is not subject to the

criticism thus made upon it. At the beginning of the instruction, the jury are required to find from the evidence, that the lots in question, are susceptible of enlargement, etc. The requirement to find from the evidence, as thus made at the beginning of the instruction, applies and extends to all the subsequent clauses of the instruction. We have held in a number of cases, that it is not necessary to tell the jury in each sentence of an instruction, that they must believe from the evidence. If the first part of an instruction contains a clause, requiring them to make a finding from the evidence, a jury of intelligent men will not be misled by the omission of such a clause in the remaining portion of the instruction. (*Miller* v. *Balthasser*, 78 Ill. 302; *Gizler* v. *Witzel*, 82 id. 322; *Belden* v. *Woodmansee*, 81 id. 25).

The judgment of the circuit court of Peoria county is affirmed.

*Judgment affirmed.*