## The Herald-Dispatch Company v. Virgil N. Hostetler.

1. CORPORATION—*when estopped to deny liability upon note.* A corporation is estopped to deny liability upon a note which for years has been carried on its books as one of its liabilities and upon which, during all of such time, it has paid interest, with the knowledge of its stockholders and directors.

2. CORPORATION—*burden upon officer to show disposition of funds.* The burden of proof is upon·an officer of a corporation, to whom corporate funds have been entrusted, to show the due and proper disposition of such funds.

3. BY-LAW—*concerning salary of employe construed.* Where the salary of an employe of a corporation is made dependent upon its annual earnings being of a specified amount, the right to such salary is dependent each year upon the earnings of such corporation equaling such amount, and the earnings of such corporation for a period of years cannot be averaged and if the average equals the specified amount, the salary be paid.

4. AMENDMENT—*power of chancellor to permit.* It is within the sound judicial discretion of the chancellor to permit a defendant to amend his answer and the action of the chancellor in such regard will not, in the absence of abuse, be the subject of review.

Bill for accounting. Appeal from the Circuit Court of Macon county; the Hon. W. C. JOHNS, Judge, presiding. Heard in this court at the November term, 1905. Reversed and remanded. Opinion filed November 27, 1906.

HUGH CREA and HUGH W. HOUSUM, for appellant.

REDMON & HOGAN and I. A. BUCKINGHAM, for appellee.

MR. JUSTICE BAUME delivered. the opinion of the court.

Prior to February 21, 1890, appellee, Virgil N. Hostetler, and one Hall owned and conducted a newspaper in the city of Decatur called the Decatur Herald, and James Millikin, Orlando Powers, Jason Rogers, John Ullrich, E. P. Vail, I. R. Mills and W. F. Calhoun owned and conducted a newspaper in the city of Decatur called the Decatur Dispatch. The Dispatch was then a losing concern and negotiations were pending looking to a consolidation of the two newspapers. With this end in view appellee secured from his partner Hall an option or agreement for the sale by Hall to appellee of Hall's one-half interest in the Decatur Herald for $7,000. The preliminary agreement for the consolidation of the two newspapers was drawn by E. P. Vail, and is as follows:

"DECATUR, ILL., Feb. 21st, 1890.
I hereby agree on March 1st, 1890, to consolidate the Decatur Morning Herald and the Morning Dispatch on the following terms:

The Herald to go in at $14,000; the Dispatch at $8,800; the consolidated company to have a capital stock of $22,800, of which amount I am to have as paid up stock, $12,000, and the Dispatch owners to have a paid up stock of $8,800. The property to be combined and all property of both papers to become the property of the new company upon the condition that the Dispatch gentlemen, with myself, secure $7,000 with which to pay Mr. Hall, by March 1st, 1890, in the event Hall sells to me, as per agreement in writing signed by him this day.

(Signed) V. N. HOSTETLER."

On February 22, 1890, E. P. Vail secured the several signatures to the note for $7,000, to be given to obtain that amount of money to purchase the interest of Hall. That note is as follows:

"$7,000.00    DECATUR, ILLINOIS, Feby. 22nd, 1890;
On or before, three years after date, we, or either

of us, promise to pay to the order of J. Millikin &
Co., seven thousand dollars, with interest at the rate
of seven per cent per annum until paid.    Interest
payable annually.

V. N. HOSTETLER,
JAMES MILLIKIN,
EDWARD P. VAIL, ·
ISAAC R. MILLS,
JOHN ULLRICH,
JASON ROGERS,
ORLANDO POWERS.''

March 29, 1890, in pursuance of the agreement to
consolidate, appellant, The Herald-Dispatch Com-
pany, was incorporated with a capital stock of $22,800
divided into 228 shares of $100 each, of which $12,000
was issued to appellee, $8,800 to the several owners
of the old Dispatch company and $2,000 was held in
the treasury of appellant and subsequently issued,
$1,000 to W. J. Hostetler, $500 to George R. Wagen-
seller and $500 to Charles Wagenseller, in part pay-
ment of their wages as employes of appellant.   At
a meeting of the stockholders of appellant by-laws
were adopted providing for the election of five direc-
tors, a president, vice-president, secretary, treasurer
and general manager.   The duty of keeping cor-
rect books of account of the business of the com-
pany was imposed by the by-laws upon the treas-
urer, and the general manager was thereby charged
with the general management of the entire busi-
ness of the company and the control of all the
property of the company.   The salary of the gen-
eral manager was fixed by the by-laws at $1,800
per annum, *provided* that the business of the
company should pay $1,000 annually above the ex-
penses of the company.   James Millikin, Virgil N.
Hostetler, George R. Wagenseller, W. J. Hostetler
and W. F. Calhoun were elected directors of the cor-
poration, and at a meeting of the directors, the other
officers of the corporation were elected as follows:

James Millikin, president; Charles N. Wagenseller, vice-president; W. J. Hostetler, secretary and treasurer; Virgil N. Hostetler, general manager.

Appellee continued general manager of appellant corporation until August 5, 1899, when he sold his interest therein to Owen Scott, W. F. Calhoun and B. K. Hamsher, who also purchased the interest of all the other stockholders except George R. and Charles N. Wagenseller.    Pending the negotiations for the sale by appellee of his interest and the interest of his brother, W. J. Hostetler, to Scott, Calhoun and Hamsher, the intended purchasers ascertained in the course of their investigations as to the amount of the indebtedness of appellant corporation, that the $7,000 note, heretofore mentioned executed at the time of the consolidation of the Herald and Dispatch, had been carried upon the books of the corporation as its indebtedness and that payments to the amount of $6,330.81 had been made upon the note out of moneys realized from the business of the corporation.    The intended purchasers refused to assume the payment of the balance due upon said note as a liability of the corporation and thereupon appellee refused to consummate a sale of the interest represented by him until the liability of the corporation upon said note had been fixed.    It was insisted by E. P. Vail on behalf of some of the stockholders in appellant corporation formerly owners of the Decatur Dispatch, that the $7,000 note was the personal obligation of appellee; that appellee was the principal upon the note and that the other signers were sureties merely, who had executed the note as such to enable appellee to purchase the one-half interest of his partner Hall in the Decatur Herald. The contentions of the several parties with reference to liability upon the note was finally settled in an agreement whereby appellee assumed the payment of one hundred and thirty-two hundred and twenty-eighths of

the balance remaining due thereon, Scott, Calhoun
and Hamsher assumed $1,000 of such balance and
the former owners of the Decatur Dispatch assumed
the remainder of such balance.    In pursuance of
this agreement appellee paid to J. Millikin & Co. the
amount of the balance due upon the note assumed by
him, and received the following release from further
liability.

"Whereas, J. Millikin & Co. are the owners of a
note executed by V. N. Hostetler, J. Millikin, O.
Powers, Jason Rogers, E. P. Vail, I. R. Mills and
John Ullrich, dated February 22, 1890, made payable
to the order of said J. Millikin & Co., for the sum of
Seven thousand dollars, with seven per cent. interest
per annum, and whereas the sum of three thousand
dollars and all interest to August 4, 1899, has been
paid upon said note and whereas the balance due on
said note on August 4, 1899, is four thousand dollars:

Now therefore, as the said Hostetler has paid 130-
228th of said note we, the said Millikin & Co., in con-
sideration thereof, hereby release said Hostetler
from all further liabilities on said note.

Decatur, Ill., August 5, 1899.

J. MILLIKIN & Co."

After the sale by appellee of his interest in appel-
lant corporation to Scott, Calhoun and Hamsher, ap-
pellant filed its bill in equity against appellee for an
accounting and to enjoin the prosecution by appel-
lee of two suits instituted by him against appellant
to recover upon certain notes executed by appellant
to appellee.

The bill alleges that appellee, at the organization
of appellant corporation, subscribed for and became
the owner of 130 shares of its capital stock, and that
in order to pay for said stock he borrowed the sum
of $7,000 and gave his note therefor; that during the
time appellee was manager of appellant corporation,
covering a period of nine years, appellant did a
profitable business and earned and received through

its manager a large sum of money, to wit, $300,000, and had the business of appellant been honestly conducted by appellee as manager, and a faithful account been kept by him of all the earnings and receipts, large dividends could and would have been declared to the stockholders. The bill further charges that it became and was the duty of appellee, as manager, to have kept a full, accurate and intelligent set of books, showing the business transactions of appellant, and that appellee, as such manager, failed and neglected to keep or have kept such a set of books of account; that while it was impossible to set forth all the money of appellant which appellee wrongfully converted to his own use, yet that appellee from time to time appropriated to his own use large sums aggregating $25,000; that appellee took large sums of money to apply upon the $7,000 note given by him to J. Millikin & Co., amounting to $6,216.86; that during the time appellee was general manager of appellant he wrongfully took from appellant large sums of money amounting to $7,913.95 for the payment of dues on stock of the People's Savings & Loan Ass'n. of Decatur subscribed for by appellee in his own name; that appellee wrongfully appropriated to his own use the sum of $2,000 belonging to appellant, for the payment of certain real estate purchased by appellee; that appellee wrongfully appropriated the sum of $2,800 belonging to appellant, for the payment of interest on his personal note to one Thomas Handy, which note was secured by mortgage on certain real estate and that he wrongfully appropriated $5,000 belonging to appellant in making permanent improvements on said real estate, and wrongfully appropriated $421.90 belonging to appellant in the payment of taxes on said real estate; that appellee in making settlement with divers persons for services rendered such persons by appellant settled large claims held by such persons

against him individually and thereby wrongfully converted credit and funds belonging to appellant to the amount of $5,000; that appellee wrongfully appropriated a like sum of money belonging to appellant in the payment of his private debts and debts of his family; that while the business of appellant was prosperous during the time appellee was general manager, the surplus earnings of appellant were entirely consumed by appellee and not a dollar was paid to stockholders, and that by force of the by-laws of appellant corporation appellee was not entitled to any allowance of salary as manager. By his original and amended answers to the bill appellee denied its material allegations and upon issue being joined the cause was referred to the master in chancery to report the proofs with his conclusions.

The findings of the master were favorable to appellant and fixed the amount due to it from appellee at $16,700.22. Upon hearing and considering the exceptions filed by appellant and appellee respectively to the master's report, the chancellor entered a decree finding the sum of $783.98 to be due from appellant to appellee, and this appeal is prosecuted to reverse such decree.

The record in the case is very voluminous and appellant presents to this court for determination many questions involving the details of a complicated accounting between the parties. If the court was disposed to undertake the exhaustive examination of the accounts demanded by appellant in its brief and argument, the insufficiency of the abstract to properly inform the court as to the various items of the accounts involved would preclude such examination, but we are of opinion that such examination is not necessary to a determination of the merits of the controversy.

So far as we are justified in considering the contentions of appellant for a reversal of the decree they are, as follows:

1. The court erred in finding that the $7,000 Millikin note was the joint and several obligation of the several signers and not the individual obligation of appellee, and that said note became and was the obligation of appellant corporation.

2. The court erred in finding that appellee was entitled to credit for salary at $1,800 per year from March 1, 1890, to August 5, 1899.

3. The court erred in finding that appellee was not required to keep the books of appellant corporation.

4. The court erred in applying the rule as to the burden of proof.

5. The court erred in permitting appellee to amend his answer after the evidence had been closed and the master's report had been filed and while the case was pending for hearing before the court on exceptions to the master's report.

The note for $7,000 was, upon its face, the joint and several obligation of all the makers, and as such it conformed to the provisions of the consolidation contract of February 21, 1890, wherein it was stipulated that the $7,000 necessary to purchase the interest of Mr. Hall in the Decatur Herald was to be "secured;" that is, obtained by all the signers jointly. True, the consolidation contract refers to a sale by Hall of his half interest in the Herald to appellee, but it also contemplates that the entire property was to be taken over by the new company —the appellant corporation—to be thereafter organized. It seems to have been anticipated that appellee could make better terms with his partner, Hall, for the purchase of the latter's interest in the Herald property than could have been made by the owners of the Dispatch acting jointly with appellee, and therefore the negotiations for the purchase of Hall's interest were conducted by appellee personally. We attach no significance to the fact that the contract refers to the sale by Hall of his interest to appellee,

rather than a sale to appellant corporation, which was not then organized. It is urged on behalf of appellant that the sale by Hall of his interest in the Herald property accrued solely to the benefit of appellee by the issuance to him of stock in appellant corporation of the par value of $12,000, and that appellant received no benefit whatever from the avails of the note. By the terms of the consolidation contract the capital stock of appellant corporation was to be $22,800, of which amount the Herald property was to represent $14,000 and the Dispatch property was to represent $8,800. As a matter of fact the capital stock of appellant corporation as fixed was largely fiction. The tangible property of the two newspaper plants did not exceed $9,000. The Dispatch was confessedly a losing concern in which its owners were constantly sinking large amounts of money, while the Herald was a going concern, doing a comparatively profitable business and having a valuable asset in its good will. Appellee was an experienced and successful newspaper manager, and the owners of the Dispatch were desirous of effecting a merger of the two newspaper plants whereby they might secure the prestige of the Herald and the benefit of the practical experience and services of appellee in the conduct of the consolidated newspaper. If it had been contemplated that the purchase of Hall's half interest in the Herald for $7,000 was for the sole benefit of appellee, then manifestly appellee would have been entitled to have issued to him stock in appellant corporation of the actual value of $14,000, and it cannot be reasonably assumed that he would have been content to accept stock of the par value of $12,000 in a concern which was overcapitalized.

Furthermore, we think appellant is now estopped to deny that the note in question is its obligation. When appellant corporation was organized and commenced business the note in question was entered upon its books as a liability of the corporation and

for nine years thereafter payments of interest and principal amounting to $6,216.86 were made upon the note out of the proceeds of the business of appellant corporation, and with the knowledge of its directors, and stockholders. · The fact also that at the time of the transfer by appellee of his interest to Scott, Calhoun and Hamsher, appellee was released from further liability on the note upon the payment by him of such portion of the note as the shares of stock held by him bore to the whole number of shares of the capital stock of appellant corporation, confirms us in the opinion that the note was the joint and several obligation of all the signers, and that it was executed with the undersanding that it should become a liability of appellant corporation,' when organized.

As regards the claim of appellee for salary as general manager of appellant corporation, the chancellor found that the cash books kept by appellant prior to January 26, 1895, were not in evidence and were shown to have been lost, and that by reason thereof no correct account could be stated as to the amount withdrawn by appellee prior to that date; that appellee was entitled to salary during the time he was general manager prior to that date; that before or at the time appellee sold his stock to the present owners and retired from the management of appellant corporation, he agreed not to make any claim against appellant for unpaid salary, and that appellee should only be allowed for salary prior to that date such amount as was shown by the evidence to have been withdrawn by him during that period; that appellant corporation did earn $1,000 per year over and above its expenses during the time appellee was its manager, and that if the earnings in any one year did not amount to $1,000 that the earnings averaged more than $1,000 per year above expenses during the entire period, and that, therefore, appellee was entitled to his salary during every year. Predicated upon these findings appellee was allowed

a salary of $1,800 per annum for the period from January 26, 1895, to August 5, 1899. As before stated, the by-laws of appellant corporation provide that the salary of the general manager shall be $1,800 per annum, "*provided*, that the business of the company will pay $1,000 annually, above the expenses of said company."

The evidence tends to show that while no dividends were paid to the stockholders of appellant corporation during the time appellee was its general manager, a very considerable amount was realized during that period as earnings of the corporation over and above its expenses, which was expended in betterments and additions to the plant of the corporation and that the amount so realized averaged more than $1,000 per annum during the entire period. It is insisted on behalf of appellant that as no dividends were paid to stockholders upon the capital stock of appellant corporation during the period appellee was general manager, it cannot, within the meaning of the by-laws, be said that the business of the company paid anything during that period. We are not disposed to give our assent to this view of the case. Whether or not dividends should be declared by the directors of appellant corporation out of its earnings, was a matter over which appellee had no absolute control, as he was only one of the five directors. If appellant corporation, through the management of appellee, earned over and above its current expenses, money which was available for the payment of dividends, or to be expended in betterments or additions to the plant, and its directors chose to apply such earnings in betterments and additions to the plant rather than in the payment of dividends, it was a paying concern within the meaning of the by-laws, and appellee should not be deprived of his salary because of the action of the directors in applying the earnings of the corporation in betterments and additions rather than in the payment of

dividends. The word "pay" used in the by-law should be interpreted as synonymous with the word "earn."

We are of the opinion, however, that the chancellor erred in holding that if the earnings in any one year did not amount to $1,000, the earnings for the entire period might be averaged, and if the average earnings per year during such period amounted to $1,000 the requirements of the by-law would be complied with, and appellee be entitled to his salary. To entitle appellee to the stipulated salary it is necessary that appellant corporation should have earned $1,000 annually—that is, each and every year, year by year. Such is the clear meaning of the word annually. Juker v. Com., 20 Pa. St. 494; Union Iron Co. v. Pierce, 4 Biss. U. S. 330; Kearney v. Cruikshank, 117 N. Y. 99.

The duty of keeping the books of account of the business of appellant corporation is imposed by its by-laws upon the treasurer of the corporation, and appellee cannot be held responsible for the failure of such treasurer to keep such books of account, unless it shall appear that appellee was in fact responsible for such failure. The evidence tends to show that books of account of the business of appellant corporation were kept from its organization until the sale by appellee of his interest therein, and that such books of account were left in the office of appellant when appellee severed his connection therewith; that subsequently, some of the books of account may have, inadvertently or otherwise, been sold to and carted away by a junk dealer, as waste. Certain it is that upon the hearing of this case, the cash books of appellant kept from its organization until January 26, 1895, could not be found for the purpose of being introduced in evidence.

Such of the cash books and ledgers as were introduced in evidence, or such portions of those books as purport to show the accounts in controversy, do not

appear either in the record or the abstract and this court is unable to determine whether they purport to show that any considerable amount, and if so, how much, of the funds of the appellant corporation went into the hands of appellee. As to all the funds of appellant corporation coming into his hands, the burden is cast upon appellee as agent of the corporation, to show what disposition he made of such funds and what portion, if any, of such funds belonged to him. In Illinois Linen Co. v. Hough, 91 Ill. 63, it is said: "It is ordinarily the duty of agents to keep regular accounts and vouchers of the business in the course of their agency, and if this duty is not faithfully performed, the omission will always be construed unfavorably to the rights of the agent, and care will be taken that the principal shall not suffer thereby." Story on Agency, sec. 332. In Story's Eq. Jur., sec. 468, after observing upon the duty of agents to keep regular accounts and vouchers, it is remarked further: "Upon similar grounds, as an agent is bound to keep the property of his principal distinct from his own, if he mixes it up with his own the whole will be taken, both at law and in equity, to be the property of the principal, until the agent puts the subject-matter under such circumstances that it may be distinguished as satisfactorily as it might have been before the unauthorized mixture on his part—in other words, the agent is put to the necessity of showing, clearly, what part of the property belongs to him; and so far as he is unable to do this, it is treated as the property of his principal."

The fact that the treasurer of appellant corporation did not keep accurate books of account of the business of the corporation, and that appellee relied upon such books of account to show the true status of his account with the corporation and the disposition of the funds of the corporation coming into his hands, does not excuse appellee from assuming the burden of showing that such funds were rightly appropriated by him in payment of the legitimate

obligations of the corporation. Illinois Linen Co. v. Hough, *supra*.

The case last cited clearly lays down the correct rule as to the burden of proof in cases involving an accounting between a corporation and an agent of such corporation, with respect to funds of the corporation coming into the hands of such agent, and the rule there announced, and heretofore stated as applicable to this case, seems to have been applied by the chancellor in arriving at the decree here involved.

To permit appellee to amend his answer was within the sound judicial discretion of the chancellor and there was no abuse of such discretion in this case.

Because of the error in allowing appellee a salary of $1,800 per annum as general manager without requiring proof by him that the business of appellant corporation had earned annually $1,000 above its expenses, the decree will be reversed and the cause remanded for further proceedings.

*Reversed and remanded.*