ARCHIBALD C. WADSWORTH et al.

v.

WILLIAM H. DUNCAN.

*Filed at Springfield November 10, 1896—Rehearing denied January 15, 1897.*

1. PARTNERSHIP—*members of a joint stock association are liable as partners.* The members of an unincorporated joint stock association are partners, and each member is liable for the debts of the association, unless he has shifted his liability in the mode pointed out in the articles of association.

2. SAME—*when remaining members of association become a new firm.* Remaining members of a joint stock association constitute, among themselves, a new firm without special agreement to become such, after retirement of former partners by purchase of their stock by the association, where they continue the business as before.

3. SAME—*what will show an assumption of firm debts by remaining partners.* Continuance of a banking business by a joint stock association, without any change of method, after former partners had retired by sale of their stock to the association, will show an assumption of the association's debts by the remaining members, where the assets of the association exceeded its indebtedness, and depositors were credited and debited on the same pass-books without balancing them up to the time of forming the new partnership.

4. PARTIES—*when former partners need not be joined as defendants.* In the absence of evidence showing an agreement by retired partners to remain liable, the remaining partners cannot, when sued for a partnership debt, sustain a plea of non-joinder of such former partners, where those remaining had fully consented to the retirement, and had, by acts and conduct, assumed the firm debts. (*Page* v. *Brant,* 18 Ill. 37, and *Edwards* v. *Dillon,* 147 id. 14, distinguished.)

5. SAME—*when an equitable owner of stock need not be joined.* An equitable owner of stock in an unincorporated association need not be joined as defendant, where such stock is held by a trustee under a declaration of trust, and such equitable owner did not know of the trust and was not regarded as a stockholder either by the association or the public.

6. EVIDENCE—*admissions made in a bill in chancery are competent.* Upon the question raised by a plea of the non-joinder as defendants of certain alleged members of an unincorporated association, a bill in chancery for a receiver by the members filing such plea, describing themselves as the association's stockholders, is admissible.

*Wadsworth* v. *Duncan,* 61 Ill. App. 156, affirmed.

APPEAL from the Appellate Court for the Third Dis-. trict;—heard in that court on appeal from the Circuit Court of Morgan county; the Hon. CYRUS EPLER, Judge, presiding.

MORRISON & WORTHINGTON, and RICHARD YATES, for appellants:

The members of a joint stock company, whether as signers of the original articles of association or as holders of shares of stock therein, are partners, and each is liable for the debts of the company. Every contract of such an association is a joint obligation, binding upon all its members. 2 Lindley on Partnership, chap. 2, pp. 1083, 1084.

A contract which is binding upon the firm is binding upon all the partners jointly, and upon none of them severally. 1 Lindley on Partnership, 366.

Joint contractors must all be sued, although one has bankrupted and obtained his certificate, for if not sued the others may plead in abatement. 1 Chitty's Pl. 42 *a.*

OWEN P. THOMPSON, and JOHN A. BELLATTI, for appellee.

Mr. JUSTICE PHILLIPS delivered the opinion of the court:

On August 25, 1893, the Central Illinois Banking and Savings Association, a private bank owned by appellants and others, closed its doors, and a bill was filed by appellants and certain others, as complainants, for a dissolution of the partnership and the appointment of a receiver, making certain other partners defendants. This association was organized in 1867 as a joint stock company, with a capital of $100,000, divided into one thousand shares. The articles provided for a board of directors, who were to elect their president and cashier and other officers and manage the business, which was prescribed and regulated by various provisions, and among others was one to the effect that stock in the association should

be assignable and transferable on the books of the association with the assent of the board of directors, in the presence of the president or cashier, etc. That article further provided that in case of a refusal to assent to the transfer the association should take the stock at a price fixed, in a special manner. By the articles the association was to continue twenty years. Certificates were issued to the subscribers to the stock, and at the time of its organization there were twenty-eight members. By cancellation and sale of stock there was a reduced number of members, and the association acquired by purchase about $40,000 of the stock.

Appellee was a depositor in the bank at the time its doors were closed, and brought his action to recover against the stockholders, as alleged in the bill for the appointment of a receiver. Appellants pleaded the non-joinder of twenty-six persons who had been stockholders, and the question presented on this record arises on that plea, on which issue had been joined, and on trial a verdict for plaintiff resulted. The twenty-six persons named in the plea, except Mrs. E. C. Adams, were persons who had been shareholders and had assigned their stock to either the association or to third persons before the bank suspended payment. In each case where stock was transferred by a stockholder to another a new certificate of stock was issued to the purchaser, but in only one instance was the transfer made on the books of the company in the manner provided by the articles. Where the stock was sold to the association the certificate was endorsed and surrendered to the association. The holder of the certificate thus transferred never afterwards drew any dividends, but the purchaser or the association took the same.

The members of a joint stock association are partners, and each member is liable for the debts of the association unless he has shifted his liability in the very mode pointed out in the articles of association. (*Robbins* v.

*Butler*, 24 Ill. 387.)   Between themselves, as members, and
third persons, this liability would exist, but as among the
members of the association a different rule would prevail.
In this case most of the persons named in the plea of non-
joinder had owned stock, but had sold it (most of them
to the bank) long prior to December 14, 1887, and after
the sale of their stock never had anything to do with
the affairs of the bank.   When parties sold their stock the
purchaser generally surrendered the certificate and the
bank issued a new one to the purchaser, except in those
cases where the bank purchased the stock, in which case
the bank held that so purchased.   In the cases where the
bank purchased the stock the bank paid its value to the
seller, took an assignment, and the seller's connection
with the affairs of the bank ceased.   The association
retained all the money and assets of the bank and noth-
ing was said about either assets or liabilities.   The re-
maining partners tacitly formed a new partnership and
appropriated all the assets of the old firm, and in prac-
tice assumed the liabilities and paid the checks of the
depositors who had deposited with the old firm.

On December 14, 1887, when the original articles of
association expired, none of those who had previously
sold their stock were notified that those who then owned
the stock and bank intended to continue the business
under the old name, nor was their consent asked or ob-
tained.   From December 14, 1887, to October 29, 1890,
the bank did business under the old name, and on the last
named date William Brown, named in the plea, sold, as-
signed and transferred his stock to the bank,—that is,
to his co-partners,—and his co-partners retained all the
assets of the bank, including all moneys on deposit, and
from that time paid the checks drawn by the depositors
of the old firm.   In the winter and spring of 1892, at the
request of the managers of the bank, Mrs. Hatch, Mrs.
Brock and Mrs. Phillips, who were also named in the
plea, severally, each sold her stock to the bank,—that is,

to their co-partners,—and the co-partners so purchasing formed a new partnership under the old name and con-. tinued the business, taking all the assets of the old firm and paying checks drawn on them by depositors of the old firm. The evidence shows that the association bought shares from individuals as early as 1878, and all the stock so purchased was held and owned by the remaining share-holders in the proportion of the shares held by each. This was no more than certain partners buying out their co-partners and continuing business in the name of the existing partners under the same name. As between the remaining partners a new firm was thus created, and it is difficult to escape the conclusion that there was by the new firm an assumption of the debts, as it appears from the evidence the assets of the association were at all times apparently more than its indebtedness, and the business was continued without any change of methods, and money was paid out to and received from depositors and credited or debited on the same pass-books, without balancing them, up to the time of forming such new partnership.

The relation between the depositor and the bank was that of debtor and creditor, and the firm continuing the business after the retirement of a partner, retaining all the deposits, receiving other deposits and paying checks, was, as a firm, liable for money had and received. As between such retiring partner and the association the liability for the deposit existed on the part of the association, as it still existed. This would result from the manner in which the business was done. If the depositor knew of the change in the association and acquiesced therein, and made other deposits and drew checks, etc., he could not hold the retiring partner liable, even though such partner or shareholder, in transferring his shares, did not do so in strict accordance with the articles of the association. Much stronger is the case among the partners or shareholders themselves. It is true that a

depositor, with notice of who are shareholders, making a deposit, could have his action against all who were partners at the time of making such deposit. But that question is not presented on this record, for here the remaining partners are insisting the suit should be also against those who have retired from the association by a sale of their stock, which, as we have seen, as among the partners themselves, resulted in the organization of a new firm and the assumption of the indebtedness by it. Such partners of the new firm so continuing business have no right to demand that such shareholders so transferring their stock should be made defendants.

The case on this record is distinguishable from *Page* v. *Brant*, 18 Ill. 37, and *Edwards* v. *Dillon*, 147 id. 14, as in those cases the partnerships actually existed between the partners themselves, and where there is an actual, existing partnership and liability jointly, and a suit is brought against certain members of the firm for a partnership indebtedness under a plea of non-joinder, it may be shown that all the partners liable are not sued. But where those who are liable are sued, and by such a plea they seek to have others sued who have ceased to be members of the association, such plea cannot be sustained, in the absence of evidence showing an agreement or promise to remain liable. In this case there is no positive evidence of an agreement or promise on the part of those remaining members of the association and continuing the business to pay existing indebtedness, nor of those selling their stock to remain liable. But from all the evidence we hold the facts show those continuing the business assumed the payment of the indebtedness.

Mrs. Eliza C. Adams, one of the parties named in the pleas of non-rejoinder, is a sister of Lloyd W. Brown, president of the bank, and had resided in Jacksonville for some eight years. In 1882 her husband purchased one hundred and twenty-eight shares of the bank stock of one Wiswall, for the benefit of his wife. The invest-

ment was put under the control of said Lloyd W. Brown, who was made a trustee for his sister by the donor, and the trustee filed and had recorded a statement declaring him such trustee, in which it is stated: "That is to say, whereas there has been assigned and transferred to me, as trustee, for the sole and separate use of the said Mrs. E. C. Adams, one hundred and twenty-eight shares of the capital stock of the Central Illinois Banking and Savings Association at Jacksonville, Illinois, I hereby declare that the legal title of said stock is invested in me, as trustee, for the sole and separate use of the Mrs. E. C. Adams who is the beneficiary thereof, and her individual directions and receipts shall be complete discharges and vouchers for me, and she shall have the right to dispose of the same by will or otherwise." The evidence shows that Mrs. Adams never held any stock in the association, never knew anything about the affairs of the bank, never attended a meeting of the stockholders in her life, and never in any way held herself out to the public as a partner, and that the appellants and their co-defendants never in any way considered her a partner or treated her as a partner, or in any way represented to the public or plaintiff that she was their partner. She could not have been made a partner without her knowledge or consent, and from the evidence in this case it does not appear that she was ever consulted or knew in regard to the investment of the trust fund. It is true she may have known the money came from the bank in dividends, but did not know and was not regarded as a shareholder therein by others or herself. We hold the evidence fully justified the finding for the plaintiff on the plea of non-joinder.

It is insisted that the court erred in allowing the bill for the appointment of a receiver to go in evidence for the plaintiff. These defendants filing this plea of non-joinder were complainants in that bill. The admission of a party to a suit, of a fact, is competent evidence, no matter how made, and where the statement or declara-

tion of a party is made in a bill in chancery, that bill is competent evidence to be considered by the jury, who are to determine the weight to be given to the evidence. The relevancy of that evidence was as to the declarations therein made as to who were the shareholders at the time. It was not error to admit the bill in evidence. What we have here said sufficiently disposes of the questions sought to be raised on the instructions given and refused.

We find no error in the record, and the judgment of the Appellate Court for the Third District is affirmed.

*Judgment affirmed.*