CHARLES W. PARDRIDGE

*v.*

ALONZO J. CUTLER.

*Opinion filed November 1, 1897.*

1. INSTRUCTIONS—*instruction substantially directing a verdict must embody all the facts.* An instruction which substantially directs the jury to return a verdict for the plaintiff in case they find the facts therein recited to be true, must necessarily contain *all* the facts which will authorize the verdict directed.

2. SAME—*erroneous instruction is not cured by contradictory ones.* Error in giving an instruction substantially directing a verdict for the plaintiff, regardless of defenses which there was evidence fairly tending to prove, is not cured by the giving of instructions for the defendant contradictory of the one erroneously given.

3. EVIDENCE—*when rules of board of trade are not admissible.* In a suit by a broker, who was a member of a board of trade, to recover for losses sustained by him in closing out grain contracts negotiated by him upon the board of trade for a person not a member thereof, the rules of the board are not admissible in evidence, where there is no issue in the case affected thereby.

4. SAME—*rules of board of trade not admissible merely to give transactions a fair appearance.* In a suit by a member of a board of trade against a non-member to recover for losses sustained by the former in closing out grain contracts negotiated for the latter, all of which were settled before maturity by payment of differences, the rules of the board showing that members were liable to be disciplined for dealing in gambling contracts are not admissible to give the transactions a fair appearance.

5. SAME—*what immaterial under issue of "gambling contracts."* In a suit between a member of a board of trade and a non-member, involving the issue whether contracts negotiated by the former for the latter upon the board, and closed out before maturity, were gambling contracts, evidence of the customs of the board in case the contracts had been held open until maturity, and the consequent liability of the member to other members with whom the contracts were made, is immaterial.

*Pardridge v. Cutler*, 68 Ill. App. 569, reversed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. ABNER SMITH, Judge, presiding.

YOUNG, MAKEEL & BRADLEY, (SHOPE, MATHIS, BARRETT & ROGERS, of counsel,) for appellant:

The form of the contract is by no means conclusive of the true nature of the transaction. That must be determined from the real intention of the parties. If such contract is made as a cover for gambling, without any intention to deliver and receive the commodity but merely to pay the difference between the price agreed upon and the market price at a future day, it is within the gaming statute, and void. *Calderwood* v. *McCrea*, 11 Ill. App. 543.

What the real intention of the parties was, and whether the form was merely colorable and adopted for the purpose of covering up a series of gambling transactions, must be determined from all the circumstances of the case as disclosed by the evidence. *Barnard* v. *Backhaus*, 52 Wis. 593; *Beveridge* v. *Hewitt*, 8 Ill. App. 476; *Grizewood* v. *Blane*, 11 C. B. 526; *Brua's Appeal*, 55 Pa. St. 294; *Tenney* v. *Foote*, 4 Ill. App. 594.

Contracts for the delivery and sale of grain in the future, not made with the intention that any grain should be received or delivered, but with the understanding that each transaction should be settled by the payment of the difference between the contract price and the market price at the time fixed, are mere wagers or gambling contracts, and are void. *Cothran* v. *Ellis*, 125 Ill. 496; *Barnard* v. *Backhaus*, 52 Wis. 593; *Crawford* v. *Spencer*, 92 Mo. 498; *Bank* v. *Oskaloosa Packing Co.* 66 Iowa, 41; *Pope* v. *Hanke*, 155 Ill. 621.

A. B. JENKS, for appellee:

A person dealing at a particular market will be taken to have dealt according to the known general custom and usage of that market, and if he employs another to act for him in buying or selling at such market he will be held as intending that the business should be conducted according to the general usage and custom of such market; and this is true whether he, in fact, knows of the custom or not. *Samuels* v. *Oliver*, 130 Ill. 73; *Bailey* v. *Bens-*

*ley,* 87 id. 556; *Lonergan* v. *Stewart,* 55 id. 44; *Perin* v. *Parker,* 126 id. 201; *Bibb* v. *Allen,* 149 U. S. 481; *Curtis* v. *Wright,* 40 Ill. App. 491.

The rules show the broker's right to sell out his principal's contracts, if such principal, on sufficient notice, fails to keep good his margins. Such provision has been declared to be valid by our Supreme Court. *Denton* v. *Jackson,* 106 Ill. 433.

Every instruction asked by a plaintiff need not have embodied in it every fact or element essential to sustain the plaintiff's action, nor is it necessary to negative matters of mere defense. *Sheridan* v. *Hibbard,* 119 Ill. 307; *Underwood* v. *Wolf,* 131 id. 425.

A defendant cannot complain of an instruction given for the plaintiff when he asks and procures to be given one of the same kind himself. *Railroad Co.* v. *Sanders,* 154 Ill. 531; *Pierce* v. *Walters,* 164 id. 560; *Coal Co.* v. *Haenni,* 146 id. 614, and cases cited.

The burden of proof was on appellant to establish his defense of illegality. *Barnett* v. *Baxter,* 64 Ill. App. 544; *Pixley* v. *Boynton,* 79 Ill. 351; *Dykers* v. *Townsend,* 24 N. Y. 57; *Irwin* v. *Williar,* 110 U. S. 499; *Cothran* v. *Ellis,* 125 Ill. 496; *Bibb* v. *Allen,* 149 U. S. 481.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The appellant, Charles W. Pardridge, a dry goods merchant in Chicago, who for about eight years prior to the transactions here involved had dealt through different commission men on the Chicago Board of Trade, in January, 1891, transferred his business of that kind to the appellee, Alonzo J. Cutler, who did business under the name of A. J. Cutler & Co. It was agreed that appellee was not to call on the appellant for margins unless the amount required should exceed $5000. Up to December 1, 1891, there were frequent settlements between them, appellant paying whatever losses he sustained and appellee

paying over any profits resulting from the transactions. After that time there was no settlement, but appellant paid to the appellee sums amounting to $23,000. The trading continued until about April 1, 1893, when appellee had on hand contracts for grain amounting to 770,000 bushels in his own name but on account of appellant, and he then demanded margins to secure him in such contracts. Appellant refused to deposit the margins called for, and thereupon appellee, on April 3, 1893, closed out all of these contracts at a loss of $45,287.50. The entire losses and commissions amounted to $77,062.50, against which the appellee credited the $23,000 advanced by appellant, and the balance claimed was $54,062.50. Appellee brought this suit in assumpsit to recover the balance so claimed. Appellant defended on the grounds that the transactions were gambling, and illegal; that after the first agreement for a credit of $5000 the amount of credit was increased by agreement to $100,000, and appellee was not to call for margins unless the amount required should exceed that sum, which agreement he violated by closing out the deals, and that a note of appellant to Edwin Pardridge had been accepted by appellee in settlement of his claim. He also sought to recover, by way of set-off, the $23,000 advanced by him. There was a trial of the issues, resulting in a verdict for appellee for $54,062, upon which the court entered judgment. The Appellate Court affirmed the judgment.

The issues between the parties to the suit were few and simple, and neither the board of trade as a corporation, nor its other members as individuals, were in any manner concerned with them. On the issue that the transactions were gambling, and illegal, defendant claimed an understanding that he was to deal in differences, merely, as market prices might fluctuate, so as to win or lose money accordingly, and settle with the plaintiff on such differences. The defendant was not a member of the board of trade, and could not make any contract or deal

on the board. The plaintiff was a member, and entitled
to transact business as such. In these transactions the
plaintiff made contracts in his own name to purchase or
sell for future delivery, and when the defendant chose he
would order him to purchase or sell the same commodity
for the same delivery, and the plaintiff would make coun-
ter purchases or sales on the market and the defendant's
interest in such contracts ceased at once. The transac-
tion between plaintiff and defendant was then closed, and
defendant was credited with his gain or charged with his
loss. In the prosecution of this enterprise plaintiff made
449 purchases and sales between December 1, 1891, and
April 3, 1893, of which 220 were purchases and 229 were
sales. The purchases for future delivery amounted to
4,845,000 bushels of grain, which were sold out before the
time for delivery arrived. Of all this enormous amount
of grain none was ever delivered or tendered for delivery,
except 10,000 bushels of corn bought December 1, 1891,
which was only a paper transaction and was immediately
sold out. The only issue on that question was as to the
nature of these transactions as between plaintiff and de-
fendant, and all the facts, near or remote, bearing on that
question and on all the other issues in the case were in
the knowledge of four or five witnesses; yet the issues
were so misapprehended that the board of trade and its
rules and regulations were made the subject of investi-
gation, resulting in a trial of twelve days and a record
of over 1300 pages. Counsel says now that the question
here is whether all dealings on the board of trade of
Chicago are gambling transactions, such as will prevent
either party from having a legal claim against the other.
There was no such question in the court below and no
such question will be considered here. It is not claimed
that all dealings on the board of trade are gambling
transactions, while, perhaps, no one will deny that a part
of the business transacted there is of that character.
Plaintiff might have made *bona fide* purchases and sales

for actual receipt and delivery in every instance, but the forms adopted could be used with equal facility, by counter purchases and sales and settlement of differences, for illegal and illegitimate dealings as between him and the defendant.

Although these deals were closed out before maturity and the transactions ended as between the parties to the suit, the plaintiff was permitted by the court, against objections, to go into long examinations as to what would have been done if they had not been closed out but had gone to maturity. These examinations related to the custom on the board of trade in case contracts were not "rung up" but held open until the time for delivery; what would be the result if the customer should refuse to deliver or receive the property sold or bought; what would be the liability of the broker in such an event, and whether a broker could take advantage of or cheat his customer under the rules. In the course of the admission of testimony, the court, in his rulings, stated that the question was, what was the character of each contract between the original parties to it, and the testimony seems to have been admitted upon that theory. This evidence was all immaterial. It made no difference what the character of the contracts were as between plaintiff and other members of the board with whom they were made, nor what his liability to them would be at the maturity of the contracts.

The court also admitted in evidence, against like objection, the rules of the board of trade giving the methods and machinery of doing business there. The grounds upon which these rules were claimed to be material were, that one not a member of the board, who directs a member to deal on his account, makes the order subject to the rules and regulations of the board, and that there was a rule for disciplining a member who gambles in grain. The court, in disposing of defendant's objection, said: "It seems to me that the machinery of the board of trade,

if there are rules which protect people or which are made to protect people against trades which are illegal,—it seems to me that those rules should be admissible, to give it as clean an appearance as possible," and they were admitted for that purpose. A person dealing on the board of trade is held to have dealt according to the rules of the board, and they are admissible if there is any issue to be affected by them; but in this case there was no claim nor any pretense that the rules of the board of trade had been violated in buying or selling commodities or closing out the deals, and they did not affect any issue in the case. Defendant claimed that his private contract for a credit of $100,000 had been violated in closing him out, and that the transaction was illegal although carried on in conformity with the rules. No one can be found to deny that parties can gamble in differences under these rules as easily as to do a legitimate business, and it was wholly immaterial that the rules provided for legitimate methods. The effect of the rules was to obscure the issue by showing that under them legitimate trading could be carried on, and to admit them for the purpose of giving the transaction as clean an appearance as possible was error. The fact that the rules provided that the corporation might discipline a member for gambling, and that the member took the risk of such discipline if he was caught and the other members saw fit to administer it, did not make the rules admissible.

It appeared at the trial that previous to the transactions in question the defendant traded with Smith & Co. on the board of trade, and plaintiff, as a broker for them, filled the orders to large amounts. The defendant asked plaintiff with reference to these previous deals, on cross-examination, to show that defendant merely gambled in differences and that plaintiff knew such to be his practice. The court refused to permit the examination, and the ruling is complained of. But whether it was right or wrong, the defendant had all the benefit of the proposed

examination.    Plaintiff testified that he knew, from his experience with defendant before these transactions, that he was not in the habit of delivering or receiving property on his trades, but settled them upon differences in market value.

At the close of the evidence the defendant asked the court to give the jury a peremptory instruction to find for him, and this the court refused to do.    So far as this instruction is concerned, the set-off was abandoned and defendant asked for a verdict as against plaintiff's claim. As the case must be submitted to another jury we will not discuss the evidence, but hold that the court would not have been justified, as a matter of law, in saying to the jury that there was no evidence to sustain plaintiff's claim.    As to the legality of the transaction, the alleged credit for $100,000 and the settlement claimed by note to Edwin Pardridge, there was sufficient conflict in the evidence to authorize a submission to the jury.

The first instruction given at the request of the plaintiff was as follows:

"If the jury believe, from the evidence, that the plaintiff was a commission merchant or broker, a member of and acting on the Chicago Board of Trade, and that the defendant employed him, as such commission merchant or broker, to make purchases and sales for future delivery of commodities on the Chicago Board of Trade, and further believe, from the evidence, that there are well known rules and regulations governing transactions on said board, then it is presumed in so employing plaintiff the defendant knew and intended that any transactions under said employment would be in accordance with and under the said rules and regulations; and if the jury further believe, from the evidence, that the plaintiff did, under such employment, make purchases and sales of commodities for future delivery for the defendant on the Chicago Board of Trade in accordance with said rules and regulations, then the plaintiff is entitled to recover

from the defendant his reasonable commissions for transacting such business; and if the jury further believe, from the evidence, that the plaintiff, under said rules and regulations, was required to and did pay out money on account of such purchases and sales, then he, the plaintiff, has a right to recover from the defendant all such moneys so paid out."

The law applicable to different questions may be stated in separate instructions, and the entire law applicable to all the questions involved in a case need not be stated in each. In such case the instructions supplement each other, and if they present the law fairly when viewed as a series, it will be sufficient. But if an instruction directs a verdict for either party, or amounts to such a direction in case the jury shall find certain facts, it must necessarily contain all the facts which will authorize the verdict directed. This instruction stated that if the jury found certain facts set out in the instruction, plaintiff had a right to recover his commissions and the moneys paid out to him in the transaction. This was all that he sued for, and the instruction established his right upon such facts. All that was required to give him the verdict was that defendant had employed him as a broker to make purchases and sales for future delivery of commodities on the Chicago Board of Trade, that there were rules and regulations governing the transactions on that board, and that the plaintiff did make purchases and sales and paid out money on account thereof. If the jury found these facts, they were told that the law presumed that the transactions would be in accordance with the rules and regulations and the defendant must pay. It omitted everything in controversy in the case. Defendant testified to an agreement that he was not to be called on for margins until they amounted to more than $100,000, and he was corroborated by other witnesses. The evidence was undisputed that he claimed the benefit of such a contract when plaintiff threatened to sell him

out, and told him he would do so at his peril. If the jury believed him and his witnesses, plaintiff could not recover for a loss sustained at that sale, but the instruction said that he could recover on the facts stated in it. Again, there was evidence tending to prove that defendant's transactions were merely in differences, without any intention of buying, receiving or carrying any grain, and so understood by both parties. This understanding need not be express, but might be tacit, and implied from circumstances sufficient to raise an inference that the understanding existed. If the jury concluded, from the evidence, that the understood purpose of the transactions was to win or lose money on the fluctuations of the market, then the transactions were illegal and plaintiff could not recover. This was not included in the instruction. Again, the instruction said that it was presumed the defendant intended the transactions to be in accordance with the rules and regulations of the board which had been admitted in evidence, and then stated that if they were in accordance with them plaintiff might recover. This was giving the immaterial evidence controlling force. The evidence was that the facts stated in the instruction existed, and there was practically no dispute about them. A verdict for plaintiff would necessarily follow the instruction if the jury accepted it as their guide.

There were other instructions, given at the request of defendant, stating different rules, but they were simply contradictory of this one, and it was left to the jury to choose which one they pleased as their guide. Here was an instruction substantially directing a verdict regardless of defenses which there was evidence fairly tending to prove, and the error in such an instruction is not obviated by giving conflicting instructions. *Illinois Linen Co.* v. *Hough*, 91 Ill. 63; *Quinn* v. *Donovan*, 85 id. 194.

The judgments of the Appellate and circuit courts are reversed, and the cause is remanded to the circuit court.

*Reversed and remanded.*