Weare Commission Co. v. The People of the State of Illinois.

### Gen. No. 4237.

1. APPEAL—*does not lie in criminal case.* An appeal does not lie in a criminal case; but where the People do not move to dismiss it, but file briefs, the court is at liberty to treat the case as though pending upon writ of error, and dispose of it accordingly.

2. MARGINS—*venue in prosecution for dealing in.* A conviction for dealing in margins contrary to the statute may be had in the county where the orders were given and the money paid. (Soby v. The People, 134 Ill. 66, followed.)

3. MARGINS—*validity of statute prohibiting dealing in.* A statute which prohibits dealing in margins is not in violation of the fourteenth amendment to the Constitution of the United States. (Booth v. The People, 186 Ill. 43 and Booth v. Illinois, 184 U. S. 425, followed.)

Criminal prosecution for dealing in margins. Appeal from the Circuit Court of Bureau County; the Hon. GEORGE W. BROWN, Judge, presiding. Heard in this court at the April term, 1903. Affirmed. Opinion filed October 8, 1903.

JAY L. SPAULDING and HIRAM T. GILBERT, for appellant.

H. J. HAMLIN, Attorney General, GEORGE B. GILLESPIE, Assistant Attorney General, and ORA H. PORTER, State's Attorney, for appellee.

MR. PRESIDING JUSTICE DIBELL delivered the opinion of the court.

The fifth count of an indictment returned in the court below against the Weare Commission Company, charged that said defendant on September 20, 1901, and on divers other days between that date and the finding of the indictment, at Princeton in Bureau County, " did unlawfully keep an office wherein there was then and there permitted the pretended buying of grain on margins, without any intention of receiving the grain so bought," contrary to the statute. The indictment was under the act of 1887, the sections of which material to this case are set out at length in Soby v. The People, 134 Ill. 66. A motion to quash the

indictment was denied, and defendant pleaded not guilty. A jury was waived.  The case was tried upon a stipulation as to the manner in which defendant did business, the testimony of two customers of defendant's Princeton office, and the rules of the Chicago Board of Trade.  At the close of the evidence, defendant by appropriate motions presented the questions whether the proof was sufficient in law to justify a conviction, and whether the conviction of defendant under the evidence would violate the fourteenth amendment to the constitution of the United States.  These motions were denied.  Defendant presented three propositions of law, which the court refused.  The court found defendant guilty under the fifth count, and fined it $200, and ordered an execution for the fine and costs.  This is an appeal by defendant from said judgment.  An appeal does not lie in a criminal case, but where, as here, the People do not move to dismiss, but file briefs, the court is at liberty to treat the case as if pending on a writ of error, and to dispose of it accordingly.  Ferrias v. The People, 71 Ill. App. 559, and cases there cited; Reddish v. The People, 83 Ill. App. 63.

Defendant is a corporation engaged in the commission business, and has its principal office in Chicago.  On February 6, 1902, it opened a branch office at Princeton, and placed it in charge of F. E. Flower as its agent, and said office was conducted by Flower for defendant during the period covered by the indictment.  The prices at which grain and other commodities were selling on the Chicago Board of Trade were from time to time communicated by telegraph to the branch office, and there displayed on a blackboard to inform defendant's customers of such prices, with a view to enabling defendant to obtain business from said customers.  Flower received orders from defendant's customers at Princeton, for the purchase or sale of grain, etc., and transmitted said orders by telegraph to defendant at Chicago.  Defendant received the orders at Chicago and executed them in its own name upon the Chicago Board of Trade, and reported the transactions by telegraph to its

agent at Princeton, and he reported the transactions verbally to the customers. Defendant also mailed to each customer a report upon a printed blank filled out with the details of the transaction. Each such report contained the following printed statement:

" It is distinctly understood and agreed to by you that actual delivery of property herein mentioned is contemplated."

When a customer gave an order to defendant's agent at Princeton for the purchase or sale of grain, he was required to deposit a margin of not less than two cents per bushel on the amount of grain so ordered bought or sold. . If the market changed against the customer, he was required to furnish an additional margin. If he refused, defendant would dispose of the grain so bought or sold, and charge the customer with the loss or credit him with the profit. The customer also had the right to order a sale of property purchased, or a purchase of property sold, on his account, and was charged with the loss or credited with the profit of the transaction. Section 8 of Rule 4 of the rules of the Chicago Board of Trade provided for the expulsion from that body of any member who should knowingly execute any order for any one " dealing in differences on the fluctuations in the market price of any commodity, without a *bona fide* purchase and sale of property for an actual delivery." Section 2 of rule 23 of said rules is as follows:

" In case any property contracted for future delivery is not received and paid for when properly tendered, it shall be the duty of the seller, in order to establish any claim on the purchaser, to sell it on the market at any time during the next twenty-four hours, at his discretion, after such default shall have been made, notifying the purchaser within one hour of such sale; and any loss resulting to the seller shall be paid by the party in default."

Kruse and Cecil were witnesses for the prosecution. Kruse bought at defendant's Princeton office in December, 1902, 1,000 bushels of wheat at about seventy cents per bushel for May delivery, and put up $30 as a margin, or three cents per bushel. He did not receive any wheat, but

sold out at a profit through defendant before the day for delivery. Afterwards he bought another 1,000 bushels of wheat at seventy-seven cents per bushel, also for May delivery, and paid $30 as a margin, and also sold that wheat at a profit before the day for delivery. He testified that when Flower sold him this wheat he said: "Now your intention is to take this wheat if they deliver it to you?" and that he answered, "Yes, sir." He received reports of these purchases from the Chicago house of defendant on blanks like those above described. He testified he bought with the intention of taking the wheat if he stayed with it till delivery day came, but that he did not intend to do that and take the wheat. He had had other like transactions through other parties, and always sold out before the time for delivery. At the time of the transactions with defendant he was worth about three hundred dollars. Cecil bought 5,000 bushels of oats, put up a margin of $150 or $200, received a like statement from the Chicago house, received no grain, and sold out in thirty or sixty days. He testified that he was unable to say positively what his intentions were as to actually receiving the grain or selling it at a profit, but on cross-examination he said he owned a farm of over five hundred acres and could have made use of the grain if he had had it. We have carefully read all this testimony from the record, and are satisfied these parties did not intend to receive the grain or to pay anything therefor except the margins, but only to speculate on the price, and that Flower knew it. The act of Flower in asking Kruse if he intended to take the grain, and the act of defendant in printing in each statement it issued language purporting to bind the customer to the proposition that in making the deal he contemplated an actual delivery, were unusual precautions. In ordinary transactions of the purchase and sale of personal property such care would not be taken, for the law binds the seller to deliver and the purchaser to receive the property. The purpose of these precautions seems to have been to give an outward appearance of an intention to deliver and receive the property, where the

actual intention was well understood by the parties to be that margins only should be advanced, and that the trades should be settled by the payment of differences without any delivery. Board of Trade v. Central Stock and Grain Exchange, 98 Ill. App. 212, 223. It is obvious that Kruse had no use for 1,000 bushels of wheat nor the means to pay for it. Cecil stated no facts to give reasonable color to his testimony that he could use 5,000 bushels of oats on his farm. He did not claim to have bought that grain for use on his farm. Both Kruse and Cecil had traded in this manner before with other houses. Section 2 of Rule 23, above quoted from the rules of the Chicago Board of Trade, provides an easy way for evading an actual delivery. As was said in Pardridge v. Cutler, 168 Ill. 504, in speaking of the same or similar rules :

" Plaintiff might have made *bona fide* purchases and sales for actual receipt and delivery in every instance, but the forms adopted could be used with equal facility, by counter purchases and sales and settlement of differences, for illegal and illegitimate dealings as between him and the defendant."

And again :

" No one can be found to deny that parties can gamble in differences under these rules as easily as to do a legitimate business."

This record would not justify us in disturbing the conclusions as to the facts reached by the trial judge, who heard the witnesses testify and saw their demeanor upon the stand.

The facts being correctly decided, most of the questions of law presented by defendant we regard as settled by Soby v. The People, *supra*. There the conviction of an agent was sustained, and for reasons equally applicable to the principal. The argument here that section 4 of the act in question shows that it was aimed at bucket shops only, is answered in that opinion. It is argued here that the crime, if any, was committed in Chicago instead of in Princeton. There the court sustained a conviction in the county where the orders were given and the margins paid,

and where the office was kept, though the deal was carried out on the Chicago Board of Trade, as here. That such a statute is not repugnant to the fourteenth amendment of the constitution of the United States, is settled in Booth v. The People, 186 Ill. 43, and Booth v. Illinois, 184 U. S. 425. We see no occasion for repeating the reasoning of the cases above cited. Without repeating the propositions of law presented by defendant, it is sufficient to say we are of opinion that each was properly refused for reasons stated in the foregoing cases.

The judgment is therefore affirmed.

*Affirmed.*

Mr. Justice BROWN, who tried this cause in the court below, was a member of this court when it was submitted for consideration, but took no part in its decision here.