Elizabeth Cromer, Admx., Appellee, *vs.* The Borders Coal Company, Appellant.

*Opinion filed October 28, 1910.*

1. Instructions—*what is necessary to justify instruction directing verdict if plaintiff has proved case as alleged.* An instruction directing the jury to find for the plaintiff if they believe she has made out her case as alleged in the declaration, by a preponderance of the evidence, can only be justified where the declaration contains all the elements necessary to a recovery.

2. Same—*when declaration must negative defense of assumed risk.* In an action brought against the master for damages, where the question of assumption of risk by the servant is a defense and there is evidence tending to sustain such defense, it is error to give an instruction authorizing a recovery by the plaintiff if she has proved her case as alleged in the declaration, where the declaration neither expressly nor by fair implication negatives such defense.

3. Pleading—*what is necessary in order to negative defense of assumed risk.* If it appears from the declaration that the deceased servant knew of and complained to the master of the defects and conditions which caused his injury and continued work upon the master's promise to remedy the same, it is necessary, in order for the declaration to negative the defense of assumed risk, to aver that the servant did not work longer than a reasonable time after such promise, and that the danger was not so imminent that it was the duty of the deceased to quit work until repairs were made.

4. Appeals and errors—*when error in giving an instruction is not cured.* Error in giving an instruction which directs a verdict for the plaintiff but which omits an element essential to a recovery is not cured by other instructions of the series.

Hand and Carter, JJ., dissenting.

Appeal from the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of St. Clair county; the Hon. R. D. W. Holder, Judge, presiding.

Schaefer, Farmer & Kruger, for appellant.

Webb & Webb and Newby, for appellee.

246—29

Mr. JUSTICE COOKE delivered the opinion of the court:

The Borders Coal Company, the appellant, owns and operates a coal mine, known as Borders Mine No. 1, at Marissa. Charles Cromer had been employed in this mine as a miner and mule driver from the time it was opened until April 18, 1907. For a period of a month or more prior to that date he had been employed as a mule driver and was engaged in breaking a new mule to the work of hauling empty and loaded cars in the mine. On that date he met with an accident in the mine which resulted in his death. He left surviving him Elizabeth Cromer and two infant children. Elizabeth Cromer, as administratrix of the estate of Charles Cromer, appellee, brought this action against appellant in the circuit court of St. Clair county to recover damages on account of the death of her husband. The case was tried twice in the circuit court, the first trial resulting in a verdict for the plaintiff for $1500. The defendant filed a motion for a new trial, which was confessed by the plaintiff, and upon the second trial a verdict was returned in favor of the plaintiff in the sum of $7500. A motion for a new trial was overruled, judgment entered on the verdict and an appeal perfected to the Appellate Court for the Fourth District, where the judgment of the circuit court was affirmed. The case is brought to this court by appeal from the judgment of the Appellate Court upon a certificate of importance.

· The accident happened in what is known as the main north entry in appellant's mine. This entry extends north from the bottom of the shaft, and for a distance of something over one hundred feet has laid in it a double track, upon which the coal cars are run to and from the shaft. The east track, known as the "loaded track," is used to convey the loaded trips to the bottom of the shaft and is elevated somewhat above the west or empty track, the highest point of elevation, referred to as the "knuckle,"

being about sixty or seventy feet north of the bottom of the shaft and about eighteen inches higher than the surface of the empty track. From this highest point, or knuckle, the rails of the loaded track slope in either direction, the purpose of the elevation being to allow the loaded cars to descend from the knuckle, where they are left by the drivers, by force of gravity to the bottom of the shaft. At the bottom of the descent to the north, which is perhaps fifty or sixty feet from the knuckle, the west or empty track is joined to the loaded track by a switch, and from there on northward, beyond the first east and other entries, the main north entry contains but a single track, upon which are hauled both loaded and empty trips. The evidence offered at the trial on the part of the plaintiff tended to prove that on the loaded track, from a point near the shaft and extending north beyond the junction of the loaded and empty tracks, there were depressions or holes between the ties upon which the rails of the loaded track and the single track were laid, ranging in depth from two to eight inches, those greatest in depth being at or near the knuckle or highest point on the loaded track; that on going to work on the morning of April 17, 1907, at about seven o'clock in the morning, Charles Cromer complained to the mine manager or pit boss about the condition of the loaded track in reference to the depressions between the ties, stating that the track was full of holes and dangerous, that he was liable to get hurt driving that mule over them, and that if the mine manager did not have it fixed he would quit driving; that the mine manager told him to go ahead and drive and he would fix it right away, and that Cromer proceeded with his work and drove all of that day, returned to work the next morning, and, after having worked about an hour or an hour and a half, brought in from the first east entry, out of which he was hauling coal, on to the single track and from there to the loaded track, a trip of two loaded cars of coal. These he took south on the

loaded track to the point designated as the knuckle, where he unhitched his mule, took it down on to the space between the two tracks and allowed his trip to roll down against some other loaded cars which were standing upon that track. He then placed his mule upon the loaded track in the rear of the trip which he had just brought in. The mule would not stand in that position but got down again on the level with the empty track. After having put the mule up on the loaded track for the third time, Cromer hitched him to the rear loaded car of the two which he had just brought in, by hooking the chain fastened to the single-tree on the mule to the car. This mule, not having yet been thoroughly broken, was being driven with lines which were fastened to the spreader. Immediately after he had hitched the mule in this manner the mule started to run away, proceeding north into the mine. Cromer jumped upon the loaded track between the mule and the car, with his right hand on the car and his left on the spreader near the lines. Whether he was attempting to secure the lines or to unhook the mule from the car does not appear. He proceeded in this way, going sideways, to about the point where the empty track is connected with the loaded track by a switch, when he fell, and the car ran upon him and so injured him that he died shortly thereafter.

One of the defenses interposed was that Cromer had assumed the risk, and there is evidence tending to support this defense. The court gave to the jury the following instruction on behalf of appellee:

"The court instructs the jury that if you find, from the evidence in the case, that the plaintiff has made out her case, as set forth and alleged in her declaration, by a preponderance of the evidence, then you should find for the plaintiff and against the defendant company."

This was a peremptory instruction to find for the plaintiff if the jury should find that she had made out her case as set forth and alleged in the declaration, and it is ob-

jected to for the reason that the declaration does not neg-
ative the defense of assumed risk, and therefore the deter-
mination of whether or not the deceased had assumed the
risk had been withdrawn entirely from the consideration
of the jury.   In the late case of *Krieger* v. *Aurora, Elgin
and Chicago Railroad Co.* 242 Ill. 544, we reviewed and
discussed the authorities which treated of the giving of
this instruction under various conditions, from which it
was deduced that if it is proper to give such an instruc-
tion at all, it can only be justified where the declaration
contains all the elements necessary for a recovery.   Unless
the defense of assumed risk is negatived in appellee's dec-
laration it was error to give this instruction.   *Illinois Terra
Cotta Lumber Co.* v. *Hanley,* 214 Ill. 243.

The declaration consists of one count, and that part of
it which applies to this phase of the case is as follows:
"Plaintiff further says that her said intestate, while driv-
ing said mule in the hauling of cars in said mine and over
said portions of said track, observed the said condition of
said mule and the existence of said holes and excavations
in the surface of said track and the uncovered ties thereof,
and fearing danger of injury to his person by reason there-
of he complained to the defendant's pit boss on, to-wit, on
or about the 17th day of April, 1907, who was then and
there in charge of the operation of said mine and clothed
with the power and authority to order and direct plaintiff's
intestate, and told the said pit boss of said condition of
said mule and the uncovered ties, holes and excavations in
the surface of said track and that he was likely to be in-
jured if the said ties were not covered and the said holes
and excavations filled; that thereupon the said pit boss
promised plaintiff's intestate that he would cover said un-
covered ties and fill said holes and excavations, and then
and there ordered and directed plaintiff's intestate to con-
tinue driving said mule in said entry and over said track
until the same was repaired, as aforesaid, whereupon it

then and there became and was the duty of the defendant, through its said pit boss, to exercise reasonable care and caution to cover said ties and fill said holes and excavations within a reasonable time after said promise, but, contrary to its duty in this behalf, it carelessly and negligently failed and omitted to cover said ties or to fill said holes and excavations, although by the exercise of ordinary care it could have done so between the date of said promise and the death of plaintiff's intestate in the manner hereinafter set forth."

Having notified appellant of the dangerous condition and having secured a promise to repair, Cromer was entitled to continue in his work as a mule driver until appellant was given a reasonable time in which to have the repairs made without assuming the risk of injury, unless the danger was so imminent that a reasonably prudent man would quit the service rather than incur the danger. There is evidence in the record which could be fairly regarded as tending to show that the danger was so imminent that it became the duty of the deceased to quit the service or to refuse to proceed with his work until the repairs were made. It can be seen that the declaration does not, by express terms or by fair implication, negative the fact that the deceased assumed the risk. By no allegation is it stated, and from none can it be inferred, that the danger was not so imminent that the deceased should have quit the service rather than incur the risk, and it is not denied by any averment that deceased remained in the employment for an unreasonable time after the promise to repair. On the contrary, by the allegation that it then and there became the duty of appellant to fill said holes and excavations within a reasonable time after said promise, but that, contrary to its duty in that behalf, appellant had carelessly and negligently failed and omitted to fill said holes or excavations, although by the exercise of ordinary care and caution it could have done so between the time of the

promise to repair and the death of Cromer, appellee would seem to concede that the deceased had continued in the employment for a time longer than was required or reasonable for appellant to have made the necessary repairs. By this instruction the jury were, in effect, told that the defense of assumed risk was entitled to no consideration, and it was error to give it. The harm done by the giving of this instruction could not be cured by any other instruction given in the series, as this instruction directed a verdict for the plaintiff if she had proved the facts alleged in her declaration. *Illinois Central Railroad Co.* v. *Smith,* 208 Ill. 608; *Illinois Terra Cotta Lumber Co.* v. *Hanley, supra; Krieger* v. *Aurora, Elgin and Chicago Railroad Co. supra.*

Appellant complains of the giving of another of appellee's instructions, it being, in part, as follows: "The court instructs the jury that whenever the death of an individual is caused by the negligence or carelessness of a person, company or corporation, and is not the result of his own negligence or carelessness, then and in every such case the company, person or corporation guilty of such negligence or carelessness is liable to an action for damages, and the amount recovered in such case is for the widow and next of kin of such deceased person," etc. The remainder of the instruction consists of an application of this abstract proposition of law to the facts in this case. This proposition of law, pretending to be complete in itself, is not correct as it entirely omits the element of assumed risk, and while the question of assumed risk is incidentally mentioned in the remainder of the instruction in making the application to the particular facts of this case, that does not cure the error and the instruction should not have been given.

Appellant assigns as error the refusal of the court to give the peremptory instruction to find the defendant not guilty. The evidence was sufficient to require the cause to be submitted to the jury and the peremptory instruc-

tion was properly refused. No discussion of the question raised by the action of the court in refusing to give the peremptory instruction is necessary, for the reason that this judgment must be reversed for the error above indi-'cated in the giving of the first instruction above quoted on behalf of the appellee and a new trial had in which the evidence may be different.

The judgments of the Appellate Court and circuit court are reversed and the cause remanded to the circuit court for a new trial.        *Reversed and remanded.*

HAND and CARTER, JJ., dissenting.