**ANDREWS v. HOTEL SHERMAN, Inc., et al.**
No. 8229.

Circuit Court of Appeals, Seventh Circuit.
Nov. 3, 1943.

Russell Baker, Corrine L. Rice, and I. E. Ferguson, all of Chicago, Ill., for appellants.

Charles R. Aiken, Aiken, McCurry, Bennett & Cleary, and Michael A. Romano, all of Chicago, Ill., for appellee.

Before SPARKS, MAJOR, and MINTON, Circuit Judges.

MINTON, Circuit Judge.

The plaintiff-appellee in a complaint in four paragraphs sued the defendants-appellants for malicious prosecution, false imprisonment, abuse of process, and conspiracy.

On January 31, 1942, the plaintiff registered at the hotel of the defendant Hotel Sherman, Inc., and at that time represented himself to be the manager of the Mayfair House, Carmel, California, upon which representation he was granted special rates by the Hotel Sherman. On February 3, when the plaintiff's bill had reached the sum of $40 or more, the credit manager of the hotel called at his room and requested payment. The plaintiff represented to the credit manager that he was the owner of the Mayfair House, Carmel, California, and promised to take care of the bill. The credit manager, upon such representations, withdrew, and further accommodations and credit were extended to the plaintiff. Thereafter, the bill mounted until by February 10 it had reached the sum of $141. Between February 3 and February 10, the credit manager of the hotel and the hotel authorities called on the plaintiff for the payment of the bill. He promised on several occasions to take care of it, but neglected to do so. On February 10, the representatives of the hotel claimed that they believed the plaintiff intended to defraud the hotel of its bill, and took him into custody and turned him over to the police authorities. The hotel caused an affidavit to be filed against him, which affidavit was not prosecuted, but, according to the defendants, was, in the presence of the court before which it was pending, compromised and settled. The plaintiff's complaint is based upon this transaction.

The case was tried before a jury, and a verdict in favor of the plaintiff was returned, and upon this verdict, judgment was entered by the court. From this judgment, the defendants have appealed.

The first error complained of arose on the impanelling of the jury. The Globe Indemnity Company was the insurer of the defendant hotel and had assumed some part and responsibility of the defense. On the examination of two jurors on their voir dire, they revealed that they were insurance brokers. After the court had completed the examination of the jurors on voir dire, he asked counsel if they had any questions, whereupon the plaintiff's attorney replied:

"Yes, your Honor, I should like to ask the first two gentlemen, who are insurance brokers, whether or not they have ever been brokers for the Globe Indemnity Company?"

A Voice: "No, I have not."

Counsel for Defendant: "May it please the Court, I want to be heard in the absence of the jury."

The Court: "Well, the question has been answered."

Counsel for Plaintiff: "Whether or not they have any financial interest in it."

The Court: "No, I don't think—No, no."

Counsel for Plaintiff: "All right, your Honor."

The Court: "Anything else?"

Counsel for Plaintiff: "No other questions from me."

Counsel for Defendant: "I would like to be heard out of the presence of the jury * * *"

The Court: "I will excuse these two gentlemen. Don't do that again."

Counsel for Defendant: "Well, I object * * *"

The Court: "Wait until I select the rest of the jury."

After the rest of the jury had been selected and had been sworn and excused, counsel for the defendants said:

"Judge, I want the record to show that I object to this entire panel, in view of counsel's remark in open court and in front of the jurors, 12 of whom were in the box, referring to the Globe Indemnity Company * * *"

This was treated by the court as equivalent to a motion to discharge the venire, and the motion was overruled.

The scope of an examination of the venire on its voir dire is largely within the discretion of the trial court. Both parties are entitled to a fair and impartial jury. If the plaintiff believes in good faith, and has reason to believe, that an insurance company is the real party defendant, although not a party of record, and there are facts existing and known to the court or made known to it by the plaintiff, that might affect the impartiality of some of the venire, and the court is satisfied on the whole that the counsel for the plaintiff is acting in good faith, the court may permit the counsel for the plaintiff to inquire as to the financial or other interests any of the venire may have in the insurance company, naming it. Smithers v. Henriquez, 368 Ill. 588, 15 N.E.2d 499. It all depends upon the good faith of the counsel and the fair requirements of the case. If such good faith and fair intentions are absent and the bringing of the insurance company

to the attention of the veniremen is surreptitiously done, such conduct is prejudicial and constitutes error. Kavanaugh v. Parret, 379 Ill. 273, 40 N.E.2d 500; Edwards v. Hill-Thomas Lime, etc., Co., 378 Ill. 180, 37 N.E.2d 801.

■ In the case at bar, the court on examination of the veniremen discovered that in the venire were two insurance brokers. It was known to the plaintiff's counsel that the Globe Indemnity Company had assumed some responsibility of the defense. If either of these veniremen were employed by or financially interested in the Globe Indemnity Company, such prospective juror would be subject to challenge. Was not the plaintiff in good faith entitled to know? How else could he protect himself, except to inquire? The necessities of the case warranted such inquiry, and strongly suggest good faith and reasonable grounds for the inquiry. Under the circumstances, we do not think the trial court abused its discretion in overruling the defendants' motion.

■ The dismissal of the two veniremen by the court of its own motion was not error the defendants could complain of. The defendants were not entitled to have the case tried by any certain jurors. They were entitled to have only an impartial, legally qualified jury.

The defendants claim they were forced to trial before they had had a fair opportunity for pretrial examination of the plaintiff. The defendants filed their answer April 17, 1942. On August 24, 1942, the cause was set for trial on October 7, 1942. On September 29, 1942, an examination of the plaintiff was had in New River, North Carolina, where he was stationed in the Marine Corps. Examination was had, but the plaintiff refused to answer certain questions. On October 5, 1942, the defendants appealed to the District Court for a continuance so they could apply to the District Court in North Carolina for an order requiring the plaintiff to answer the questions. Upon being informed that the plaintiff was in Chicago and could be examined the next day, such examination was had. On the examination, it was learned that the plaintiff had been arrested in Jacksonville, Florida; Dallas, Texas; and Los Angeles, California. On the examination, the matter of the membership card in the California State Hotel Association, Ltd., was also discussed.

On October 7, 1942, the defendants objected to going to trial on that date because they had had no time to explore the arrests made of the plaintiff and to get evidence to prove that the plaintiff never was a member of the California State Hotel Association, Ltd. The court proceeded to trial.

■ The question of continuance is largely within the discretion of the trial court. As to the right of the defendants to explore the admissions of arrest to ascertain whether any of them progressed to conviction, the most the record of such conviction could be used for would be in rebuttal of the plaintiff should he on cross-examination deny such conviction. This is a contingency that might not happen, and if it did, it would only be evidence affecting the credibility of the plaintiff. It is not an abuse of discretion by a trial court to deny a motion for continuance for the purpose of enabling the production of impeaching testimony that may probably become competent.

■■ The card which the plaintiff had presented to the defendant hotel at the time he registered was produced at the hearing. This card showed on its face, "Mayfair House, Carmel, is an Active Member of the California State Hotel Association, Ltd." On the line for signature of the member at the bottom of the card appeared the plaintiff's signature. The plaintiff made no representation that he was a member of the Hotel Association. The card recites, "Mayfair House, Carmel," is the member. On the trial, there was evidence which tended to show that the plaintiff had had no connection with the Mayfair House since September, 1941. Certainly, the defendants were not prejudiced by not being permitted to investigate and prove that the plaintiff was not a member of the Hotel Association, when the plaintiff had never so represented. In addition, the defendants did not show any diligence to make such proof in the additional time they had before the pre-trial examinaiton, and they had had knowledge of the plaintiff's alleged representation that he was a member of the Hotel Association from the time he first registered at the Hotel Sherman, January 31, 1942.

■ The defendants contend it was error for the court to refuse to admit in evidence the deposition of one Moeller, Assistant Credit Manager of the Palmer

House in Chicago. The deposition showed on its face that Moeller resided in Chicago and was employed at the Palmer House, and there is no showing that he was unable to be present in court to give his testimony for any of the reasons set forth in Section 26(d) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c. It was not error to exclude this deposition.

Depositions of one Bullins, Auditor, and Goldsworthy, Assistant Manager, of the Mark Hopkins Hotel in San Francisco, were excluded also, and the defendants contend this was error. These depositions tended to show that on October 7, 1941, a man named William E. Andrews registered at the Mark Hopkins Hotel, and "gave a card which gave him as manager of the Mayfair Hotel in Carmel." Some question arose about his bill. Andrews left the hotel owing a bill of $181. His baggage remained in his room. In a few days, a woman came to the hotel, paid the bill, and reclaimed the baggage. There is no showing that the defendants knew of this circumstance prior to the time they caused the plaintiff to be taken into custody. Their conduct could not be justified upon some prior conduct of the plaintiff, even if improper, unless the defendants had some knowledge of the circumstances. No error was committed in excluding such depositions. In addition, the evidence contained in such depositions was not sufficient to show an intent to defraud an innkeeper.

The defendants contend it was error to refuse to admit in evidence the registration card of the plaintiff at the Drake Hotel. The plaintiff had registered at the Drake Hotel a few hours before he came to the defendant hotel, but for some reason, he checked out in a· very short time. As the plaintiff testified, the rate was too high. The defendants offered the plaintiff's registration card at the Drake Hotel, as it contained a recital, "Owner Mayfair House, L. A., Cal." The recital on the card was not shown to have been placed thereon by the plaintiff. It was no admission of his. There was no error in excluding the registration card.

The defendants offered in evidence the charge slips of the Hotel Sherman for a number of long distance telephone calls. The defendants claimed the slips would show that no call was made to Carmel, California, and would show the plaintiff had no credit with the persons he did call.

The slips themselves did not show what the calls were for, and were wholly without probative value to prove anything material in the cause, as there was no dispute that the amount thereof was included in the total amount of the plaintiff's hotel bill. There was no error in excluding them.

At the conclusion of all of the evidence in the case, the defendants filed a joint motion for a directed verdict and separate motions for a directed verdict as to the first, second, and fourth paragraphs of the complaint. The grounds urged for sustaining the motions were that an affidavit had been filed against the plaintiff by the defendants, charging him with intent to defraud the Hotel Sherman, Inc., of the hotel bill which the plaintiff owed; that this criminal prosecution was terminated by agreement of the parties without regard to its merits, all under the direction and supervision of the judge before whom the case was pending, and therefore there could be no showing that the defendants acted without probable cause. As to what happened at the disposition of the criminal case and what transpired in the court at the time it was disposed of, there is some conflict in the testimony. The trial court very properly left the question to the jury under ample instructions which he gave on the question.

The defendants assign as error the giving of the following instruction: "If you find from the evidence that the defendant Hotel Sherman, by its agent or agents, on the 10th of February took the plaintiff, William E. Andrews, into custody and detained him in Room 1176 in the Hotel Sherman, owned and operated by the said defendant corporation, and later took the plaintiff in the freight elevator to the alley entrance of the said hotel, and thereafter surrendered the plaintiff into the custody of police officers of the City of Chicago, then they will find for the plaintiff and assess damages such as you believe from the evidence will compensate the plaintiff for injuries he may have received, if any, from the aforesaid acts of the defendant the Hotel Sherman."

This instruction told the jury that if the defendants took the plaintiff in custody and turned him over to the police, the plaintiff was entitled to recover, without any regard to the question of whether the plaintiff had committed any crime in the presence of the defendants. The defendants claimed he had committed in their presence the crime of obtaining food, lodging, etc. at the Hotel

**530**

Sherman with the intent to defraud the owner of the hotel.

The evidence shows the plaintiff first registered at the hotel on January 31, 1942, and remained until February 10, 1942, running up a bill of $141. The bill was presented to him several times, and he promised he would pay it, but he did not; and in order to obtain further credit, the plaintiff represented to the defendant hotel that he was the owner of a hotel in California. The credit manager of the hotel, relying upon such representation, extended the plaintiff further accommodations. Such conduct the defendants had observed. The statute of Illinois, Chap. 38, Sec. 301, Smith-Hurd Ill.Stat.Ann. c. 38, sec. 301, makes such conduct prima facie proof of intent to defraud the hotel. Since there was evidence that the defendants had observed such conduct of the plaintiff as amounted to a violation of Chap. 38, Sections 300, 301 of the statutes of Illinois, the defendants had a right to have the jury pass upon that question; and if on this phase of the case, the jury should find for the defendants, then they would have a right to take the plaintiff in charge, turn him over to the police, and file a criminal affidavit against him. Furthermore, there was in evidence a release signed by the plaintiff. Nothing was said in this instruction about this release, and nowhere else in the court's instructions was the release even mentioned.

The instruction given by the court was peremptory, and as such was required to contain all of the facts which would authorize the verdict directed. The rule in Illinois is stated in the recent case of Hanson v. Trust Co., 380 Ill. 194, 197, 43 N.E.2d 931, 933, as follows: "But the rule is different where an instruction directs a verdict for either party or amounts to such a direction, then in such case it must necessarily contain all the facts which will authorize the verdict directed. Ratner v. Chicago City R. Co., 233 Ill. 169, 84 N.E. 201; Illinois Central Railroad Co. v. Smith, supra [208 Ill. 608, 70 N.E. 628]; Pardridge v. Cutler, supra [168 Ill. 504, 48 N.E. 125]. When a peremptory instruction omits a fact or circumstance essential to recovery, the law is that such error in the instruction cannot be cured by any other instruction in the series of instructions. Cantwell v. Harding, 249 Ill. 354, 94 N.E. 488; Cromer v. Borders Coal Co., 246 Ill. 451, 92 N.E. 926; Illinois Iron & Metal Co. v. Weber, supra [196 Ill. 526, 63 N.E. 1008]."

We think it was error to give this instruction.

The following instruction was objected to by the defendants:

"If you find the defendants, or any of them, guilty of the charges made against them in this complaint, or in any count thereof, the plaintiff Andrews is entitled to recover general damages. General damages are defined to be those which naturally and necessarily result from the wrongful act or omission; that is to say, those which are traceable to, and the probable and necessary result of, the injury, or which the law implies or presumes to have accrued from the wrong complained of.

"A fundamental and cardinal principle of the law of damages is that the injured party shall have compensation for the injury sustained."

This instruction told the jury that if it found one of the defendants guilty, the plaintiff was entitled to damages from all of the defendants. Obviously, this could not be true in this situation, where five defendants were parties to one complaint that charged four separate causes of action. Certainly, if the Hotel Sherman, Inc., were guilty of malicious prosecution, as alleged in the first paragraph of the complaint, it does not follow that the defendant, John King, a co-defendant, is also guilty. We think it was error to give this instruction. Kosak v. United States, 3 Cir., 46 F.2d 906.

The defendants have complained of two other instructions, but we fail to find any proper objections thereto, as required by Section 51 of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c. Therefore, no question is presented here.

When the plaintiff presented himself for registration at the defendant hotel, he signed the register and gave his address as Carmel, California. The plaintiff then told the clerk of the Hotel Sherman that he was the manager of the Mayfair House at Carmel and showed the clerk his identification card bearing the name "Mayfair House." The plaintiff testified this was the card which was in evidence and recited Mayfair House, Carmel, as a member of the California State Hotel Association, Ltd., and which was signed by the plaintiff on the line provided for the signature of

a member. The plaintiff asked for special rates on this representation, and a special rate was granted. The plaintiff having run up a hotel bill in three days of over $40, the credit manager went up to the plaintiff's room to talk to him about paying the bill, and the plaintiff represented to the credit manager that he was the owner of the Mayfair House at Carmel, California. On the assurance of these representations, additional credit and accommodations were extended the plaintiff.

The defendants offered in evidence documents purporting to show that the plaintiff was not the owner of the Mayfair House at the time he registered at the Hotel Sherman, January 31, 1942. The evidence consisted of a copy of a complaint for divorce filed by the plaintiff's wife against him, in which she claimed that she was the owner of all of the stock in the Mayfair House, and that the plaintiff had possession of it and fraudulently claimed it as his stock. As the basis of the decree settling the property rights of the plaintiff and his wife in this divorce proceeding, the plaintiff stipulated the allegations in his wife's complaint were true, and she was the real owner of the stock in the Mayfair House.

One of the things the defendants sought to prove to avoid liability for malicious prosecution as charged in the first paragraph of the complaint was that the plaintiff obtained food, lodging and other accommodations of the Hotel Sherman with intent then and there to cheat and defraud the hotel. Credit was extended the plaintiff upon his representation that he was the manager and owner of the Mayfair House in Carmel, California. If such representation was false, the defendant Hotel Sherman, Inc., was misled. It was a circumstance to be explored in an endeavor to prove fraud on the part of the plaintiff. The ownership of the Mayfair House became material. The documents offered in evidence and refused admission by the court contained admissions over the signature of the plaintiff and the plaintiff's attorney of record in a stipulation filed in court on behalf of the plaintiff that he did not own the Mayfair House. This document was filed on December 17, 1941. This was an admission against interest, and, in the form in which it existed as part of the records of a court of a sister State, was competent evidence to go to the jury on the question of the plaintiff's alleged false representations as to ownership of the May-

fair House. Wadsworth v. Duncan, 164 Ill. 360, 366, 45 N.E. 132. The evidence offered had some probative value to prove the plaintiff's intent to defraud the defendant hotel and should have been admitted for the jury's consideration. We recognize the duty of the trial court to guard against the development of collateral issues, but notwithstanding such duty, we think the court should not have denied the defendants the right to have this evidence go to the jury.

There are some other errors urged as to an instruction refused, the size of the verdict, and the conduct of the plaintiff's counsel in his argument to the jury. As the cause must be reversed and sent back to the trial court, we do not find it necessary to discuss these questions.

The judgment of the District Court is reversed, and the cause remanded.